IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HORAN, et al., | ) | CASE NO. 1:18-CV-02054 |
| | ) | |
| Plaintiffs, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS ASSERTED BY PLAINTIFF ANTOINETTE HORAN

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants University Hospitals Health System, Inc. ("UHHS"), University Hospitals Ahuja Medical Center, Inc. ("UHAMC"), University Hospitals Medical Group, Inc. ("UHMG"), University Hospitals Cleveland Medical Center ("UHCMC"), and University Primary Care Practices, Inc. ("UPCP") (UHHS, UHAMC, UHMG, UHCMC, and UPCP are collectively referred to as "Defendants") respectfully move for summary judgment on all claims asserted by Plaintiff Antoinette Horan ("Plaintiff").  Plaintiff asserts the following claims: (1) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq; (2) Title III of the ADA, 42 U.S.C. § 12181, et seq.; and (3) Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

Plaintiff is deaf and all of her claims are based upon her allegations that she could not effectively communicate with Defendants' physicians and staff during certain hospital visits. Specifically, Plaintiff alleges that her former family physician did not effectively communicate with her during one visit in 2016.  Summary judgment is appropriate on all of Plaintiff's claims

i

because the undisputed facts demonstrate that there are no genuine issues of fact and Defendants are entitled to judgment as a matter of law on all claims asserted by Plaintiff.

This Motion is supported by the attached Memorandum in Support, the deposition of Plaintiff in this lawsuit, the deposition of Plaintiff John Horan, the deposition of Plaintiff Sonya Washington of 02/28/20, the deposition of Gail Murray, the Declaration of Dr. Ali Saleh, and the Declaration of Christina Rivera.

Respectfully submitted,

*/s/ Donald G. Slezak*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendants*

**<u>MEMORANDUM IN SUPPORT</u>**

**TABLE OF CONTENTS**

                                                                                                    **Page**

I       Statement Of Adherence To L.R. 7.1                                                              1

II.     Brief Statement Of The Issues                                                                   1

III.    Summary Of The Argument                                                                         1

IV.     Relevant And Undisputed Facts                                                                   2

        A.      CP-2 Is The Interpretative Policy Applicable To UHHS Facilities                         2

        B.      The MARTTI System Has Slowly Replaced In-Person Interpreter Services
                At UHHS Facilities                                                                      3

        C       Antoinette Horan Is A Long-Time UHHS Patient Who Challenges
                Some Selected Doctor's Appointments                                                     5

V.      Law And Argument                                                                                8

        A.      Standard Of Review                                                                      8

        B.      Plaintiff Has Different Burdens For Injunctive Relief And Damages                       9

        C.      Plaintiff Lacks Standing To Bring Her Claims Because She No Longer
                Visits Defendants And Will Not In The Future                                           10

        D.      If Plaintiff Has Standing, Plaintiff Cannot Prove Ineffective
                Communication                                                                         12

        E.      Plaintiff Cannot Show That Defendants Were Deliberately
                Indifferent Toward Her Due To Her Disability                                           15

VI.     Conclusion                                                                                     17

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                              <u>Page No.</u>

*ACLU v. NSA*, 493 F.3d 644, 659 (6th Cir. 2007).                                    10

*Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1333-1334 (N.D. Ca. Feb. 2, 1994)    12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)                           10

*Ask Chems., LP v. Comput Packages, Inc.*, 593 Fed. Appx. 506, 508 (6th Cir. 2014)  10

*Bates v. Delmar Gardens North, Inc.*, Case No.4:15-CV-00783-AGF, 2017
U.S. Dist. LEXIS 148160 *17-18 (E.D. Mo. Sept. 13, 2017)                              11

*Budd v. Summit Pointe*, No. 1:19-cv-466, 2020 U.S. Dist. LEXIS 39122, *19
 (W.D.  Mich. Feb. 13, 2020)                                                          9, 10, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)                               9

*Cox v. Blue Cross Blue Shield of Mich*, 216 F.Supp.3d 820, 827 (E.D. Mich. 2016)     11

*Doe v. Sch. Bd. Of Broward Cnty., Florida*, 604 F.3d 1248, 1259 (11th Cir. 2010)   16

*Hange v. City of Mansfield*, 257 Fed. Appx. 887, 892 (6th Cir. Dec. 13, 2017)      11

*Juech v. Children's Hosp. & Health Sys.*, 353 F.Supp. 3d 772, 779 (E.D. Wis. 2018)   13

*Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012)        13, 15

*Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008)               10

*McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1147-48
(11th Cir. 2014)                                                                    13, 15

*Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011)                 12

*MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp. 3d 731, 736
(N.D. Ohio 2015)                                                                      10

*Prather v. Mirkil*, No. 2:17-cv-00183, 2020 U.S. Dist. LEXIS 64820, *7
(Dist. Nev. Apr. 14, 2020)                                                            10

*Pucci v. Taylor*, 601 F.Supp. 2d 886, 896 (E.D. Mich. 2009)                          11

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)                      9

Case: 1:18-cv-02054-PAB  Doc #: 51  Filed:  08/03/20  5 of 23.  PageID #: 314

*Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11th Cir. 2017)          11,13

**Cases**                                                                         **Page No.**

*Sunderland v. Bethesda Hosp., Inc*, 686 F. App'x 807, 819 (11th Cir. 2017)      12

**Statute**

Fed.R.Civ.P. 56(a)                                                                8, 9

4853-2076-4612.1                                        v

## I.    STATEMENT OF ADHERENCE TO L.R. 7.1

This Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio.  The present action has been assigned to the standard case management track.

## II.    BRIEF STATEMENT OF THE ISSUES

A.    Whether Plaintiff has standing to assert her claims under 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq,  Title III of the ADA, 42 U.S.C. § 12181, et seq., and (3) Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

B.    Whether Plaintiff can prove that her communication with Defendants' hospital staff was ineffective.

C.    Whether Plaintiff has waived her claim for damages.

D.    Whether Plaintiff can show that Defendants' hospital staff was deliberately indifferent toward her due to her disability.

## III.    SUMMARY  OF THE ARGUMENT

This lawsuit was initiated by seven plaintiffs asserting broad allegations of ineffective communication by Defendants University Hospitals Health System, Inc. ("UHHS"), University Hospitals Ahuja Medical Center, Inc. ("UHAMC"), University Hospitals Medical Group, Inc. ("UHMG"), University Hospitals Cleveland Medical Center ("UHCMC"), and University Primary Care Practices, Inc. ("UPCP") (UHHS, UHAMC, UHMG, UHCMC, and UPCP are collectively referred to as "Defendants").  Following discovery, four of the plaintiffs – Heather Wagley, Sandra Hatibovic, Johnny Parsons, and Samantha Harry – have been dismissed with prejudice from this lawsuit.

Plaintiff Antoinette Horan ("Plaintiff") is married to one of the two other remaining plaintiffs, John Horan.  Plaintiff and her husband attended their medical appointments together.  Relevant to Plaintiff's claims, Plaintiff and her husband were long-time patients of UH Parma Medical Associates until 2018.  Plaintiff alleges that she did not have effective communication in one visit in 2016.  Plaintiff's husband attended all of the visits, but he does not recall any facts relating to Plaintiff's claims.

Plaintiff cannot meet her burden to prove that UH Parma Medical Associates failed to effectively communicate with her during this 2016 visit.  Moreover, in order to utilize in-person interpreters, Plaintiff has elected to no longer visit UHHS facilities.  Due to this voluntary decision, Plaintiff lacks standing to assert her claims.  Finally, due to her lack of evidence of wrongful conduct and continued visits to the doctor in question, Plaintiff cannot prove deliberate indifference.  Accordingly, Plaintiff's claims fail as a matter of law and summary judgment should be entered in favor of Defendants.

## IV.  RELEVANT AND UNDISPUTED FACTS

### A.  CP-2 Is The Interpretative Policy Applicable To UHHS Facilities.

The Complaint was filed on September 7, 2018.  (ECF #1).  The Complaint alleges that CP-53 is Defendants' "primary policy" applicable to interpretative services.  (ECF #1, ¶ 28).  In fact, the only policy presented in Plaintiff's deposition of Gail Murray, PhD, CCC-A ("Murray") was CP-53.  (Deposition of Gail Murray, Ex. 7 (hereinafter "Dep. Murray at __")).[1]  Murray, however, advised Plaintiff that CP-53 had been replaced by CP-2.  (Dep. Murray at 51-52).

Since November, 2017, CP-2 has been UHHS' controlling interpretative services policy.  (Declaration of Christina Rivera ("Dec. Rivera at __") at ¶ 5)[2] (hereinafter "CP-2 at __")).  CP-2

---

[1] Cited pages attached hereto as Exhibit 1
[2] Declaration of Ms. Rivera attached hereto as Exhibit 2

addresses access to interpretive services for all patients who are "limited" in their English proficiency skills.  (CP-2 at page 1, Key Points).  The stated purpose of CP-2 is to "facilitate equal access" to UHHS' facilities and medical providers.  (CP-2 at page 1, Key Points).  The primary interpretative service offered through CP-2 is the MARTTI system.  (CP-2 at page 1, Key Points).

The full name for the MARTTI system is the My Accessible Real-Time Trusted Interpreter.  (Declaration of Christina Rivera at ¶ 7).  The MARTTI system is a portable device that utilizes a two-way video and audio wireless connection to connect patients with skilled, certified, medical interpreters.  (Dec. Rivera at ⁋ 7); (Deposition of Gail Murray at 14-15) (hereinafter "Dep. Murray at __").  In simple terms, the MARTTI system permits the patient to see and hear a live interpreter.  (Dep. Murray at 15).

CP-2 identifies communication options that are available to patients to ensure thorough and accurate communications.  (CP-2 at page 2, Sections 3 and 4).  In addition to the MARTTI system, CP-2 identifies the other options as including sign language or oral interpreters through UH approved vendors, language line, handwritten or typewritten communications, Ohio Relay Services, TTY machines, lip reading.  (CP-2 at page 2, Section 4).  The medical professional determines the most effective means of communication based on these options.  (Dep. Murray at 49-50 and 56-57).

The MARTTI system is the "preferred option for unscheduled, emergent, or multiple short encounters. . . ."  (CP-2 at page 3, Section 6.3.3).  However, "[a]t the discretion of the managing health care provider, in-person translators may be used for scheduled appointments, family meetings, patient education and training sessions when and were available."  (CP-2 at

page 3, Section 8).  Finally, CP-2 provides a Grievance Procedure for patient and patient representatives to present complaints to UHHS regarding CP-2.  (CP-2 at page 6).

    **B.**    **The MARTTI System Has Slowly Replaced In-Person Interpreter Services At UHHS Facilities.**

The MARTTI system began to be utilized by UHHS facilities following a lengthy and thorough review of interpretative alternatives led by Murray.  (Dep. Murray at 12-13).  Murray was hired by a UHHS entity in 1979.  (Dep. Murray at 10).  Since 1979, Murray has provided audiology services.  (Dep. Murray at 11).  Murray's role for the last fifteen years has been the Director of Audiology Services.  (Dep. Murray at 12).  In this role, Murray manages twenty-five employees, including fifteen audiologists.  (Dep. Murray at 12).

In 2008, due to problems associated with UHHS' reliance on in-person interpreters, Murray was given the directive to locate alternatives to in-person interpreters.  (Dep. Murray at 12-13).  Murray was able to locate a company in Columbus, Ohio that was working with a medical school to develop an online interpretative service.  (Dep. Murray at 12-13).  Murray went to Columbus to test the service.  (Dep. Murray at 12-13).  After determining the system could be effective for hearing impaired and non-English speaking UHHS patients, Murray worked to bring the system to UHHS.  (Dep. Murray at 12-13).  The online system that Murray found is the MARTTI system.   (Dep. Murray at 12-13).

The MARTTI system began to be utilized by UHHS in 2008.  (Dep. Murray at 40).  The MARTTI system was slowly rolled-out to UHHS facilitates between 2008 and 2016.  (Dep. Murray at Ex. 3).  The system wide roll-out of the MARTTI system took place in 2017, when CP-2 was updated and distributed.  (Dep. Murray at 28).  The roll-out team included approximately twelve UHHS employees, including Murray.  (Dep. Murray at 31).  When the MARTTI system was rolled out, all UHHS employees were required to attend MARTTI system

training. (Dep. Murray at 27). UHHS also includes MARTTI system training on its online training system. (Dep. Murray at 26-27). However, the MARTTI system is easy to use and is less complicated than a television. (Dep. Murray at 37). In fact, one of the plaintiffs in this lawsuit utilizes the MARTTI system on a regular basis and she agrees with this assessment. (Deposition of Sonya Washington of 02/28/20 at 10).[3]

Many of the Plaintiffs in this lawsuit utilize video phones to communicate that are a smaller version of the MARTTI system. (Deposition of John Horan at 11 ("hereinafter at "Dep. John Horan at __"))[4]; (Deposition of Sonya Washington of 02/28/20 at 17) (Deposition of Plaintiff at 21 (hereinafter "Dep. Plaintiff at ___"))[5]. Plaintiff Sonya Washington admitted that the MARTTI system and her video phone are similar, but the MARTTI system has a larger screen. (Deposition of Sonya Washington of 02/28/20 at 18). In fact, Plaintiff Sonya Washington utilizes a MARTTI system in her workplace. (Deposition of Sonya Washington of 02/28/20 at 8).

CP-2 provides that all UHHS facilities have a "custodian" of the MARTTI systems assigned to the facility. (CP-2 at page 3, Section 6.1). Custodians are trained on how to seek service on the MARTTI systems and to efficiently set up and operate the MARTTI system. (CP-2 at page 3, Section 6). Each MARTTI system also includes labels that provide users with all relevant phone numbers for access and service. (Dep. Murray at 33).

The MARTTI system is utilized by UHHS medical professionals for thousands of minutes each month. (Dep. Murray at 40). UHHS is only billed for "effective" minutes of use. (Dep. Murray at 41). For example, in December, 2019, UHHS utilized 14,500 video minutes through the MARTTI system. (Dep. Murray at Exs. 2-3). As to ASL interpreters, UHHS

---

[3] Cited pages attached hereto as Exhibit 3.
[4] Cited pages attached hereto as Exhibit 4.
[5] Cited pages attached hereto as Exhibit 5.

utilized 1472 minutes in December, 2019 through the MARTTI system.  (Dep. Murray at Ex. 3).  UHHS' MARTTI system minutes utilized per month has steadily increased since 2008 when the MARTTI system was first utilized by UHHS medical providers.  (Dep. Murray at Ex. 3).

### C. Antoinette Horan Is A Long-Time UHHS Patient Who Challenges Some Selected Doctor's Appointments.

Plaintiff is married to Plaintiff John Horan.  (Dep. of Plaintiff at 5).  Plaintiff communicates through American Sign Language.  (Dep. Plaintiff at 5).  Plaintiff's husband worked for the post office for thirty years before retiring.  (Deposition of John Horan at 8).  Plaintiff has worked for Target for the last six years.  (Dep. Plaintiff at 6-7).  Plaintiff and her husband have Medicare and can select the medical providers of their choice.  (Dep. John Horan at 12-13).

Until her husband recently began to experience cognitive issues, Plaintiff would communicate to others through her husband.  (Dep. Plaintiff at 8).  Until recently, Plaintiff John Horan was able to effectively communicate with others through written notes.  (Dep. John Horan at 10).

Plaintiff filed this lawsuit because she is seeking in-person interpreter services.  (Dep. Plaintiff at 22).  Plaintiff has now elected to seek medical care at Southwest General Health Center rather than UHHS facilities because Southwest General Health Center utilizes in-person interpreters rather than the MARTTI system.  (Dep. Plaintiff at 9-10).  Plaintiff alleges that she ceased visiting UHHS facilities in 2018, around the time that this lawsuit was filed.  (Dep. Plaintiff at 9-10).  Plaintiff testified that she will not let her husband visit UHHS facilities (Dep. Plaintiff at 11), but Plaintiff John Horan testified that he has seen his UHHS heart doctor from 2012 through the present (Dep. John Horan at 13-15).  In fact, John Horan's UHHS heart doctor always utilizes an in-person interpreter.   (Dep. John Horan at 16).

Plaintiff did not have a vivid recollection of the medical visit or visits at issue in this lawsuit.  (Dep. Plaintiff at 13-14).  Plaintiff recalled that it occurred a "long time ago."  (Dep. Plaintiff at 13).  Plaintiff ultimately recalled visits to Dr. Ali Saleh who is associated with UH Parma Medical Associates.  (Dep. Plaintiff at 14-15).  John Horan was always with Plaintiff when she visited Dr. Saleh. (Dep. Plaintiff at 14-15).  Plaintiff takes issue with the fact that Dr. Saleh communicated to her through her husband on visits in 2016.  (Dep. Plaintiff at 15).  Plaintiff was asked about the date of the visit at issue:

> Q.  Can you identify which visit with Dr. Saleh is at issue?
>
> A.  Well, let's see.  It's UH.  Maybe 2016.  Between 2016 and 2017.  Yeah I would say 2016.

(Dep. Plaintiff at 15).

Based on UH Parma Medical Associates' records, Plaintiff and John Horan visited UH Parma Medical Associates on a regular basis for many years.  (Declaration of Dr. Ali Saleh at ¶6)[6].  Plaintiff admits that she and her husband had many visits to UH Parma Medical Associates.  (Dep. Plaintiff at 14-15).  John Horan recalls visiting Dr. Thomas Gallagher at UH Parma Medical Associates for "many years" before transitioning to Dr. Saleh. (Dep. John Horan at 20).  Dr. Gallagher retired in 2015 and then Plaintiff and John Horan transitioned to Dr. Saleh.  (Dep. John Horan at 20-21).  John Horan recalls that Dr. Gallagher "did a very good job."  (Dep. John Horan at 21).  The visits with Dr. Saleh, based on John Horan's recollection, "were okay."  (Dep. John Horan at 23-24).  John Horan could not recall any specific visit to Dr. Saleh that was at issue in this lawsuit:

> Q.  Well, before we get to East Hospital I just before we leave Dr. Saleh, can you give me any specific details on any visits that you had with Dr. Saleh that there was a problem?

---

[6] Declaration of Dr. Saleh attached hereto as Exhibit 6.

A.  No.

(Dep. John Horan at 24).

Dr. Saleh's records show that he saw Plaintiff and John Horan quite regularly from 2016 through 2018.  (Dec. Saleh at ¶¶ 8-9).  From 2016 to 2018, Plaintiff visited Dr. Saleh on November 8, 2016, November 29, 2016, January 6, 2017, February 7, 2017, June 20, 2017, July 25, 2017, August 16, 2017, October 19, 2017, January 31, 2018, and March 6, 2018.  (Dec. Saleh at ¶ 8).  From 2016 to 2018, Mr. Horan visited Dr. Saleh on October 4, 2016, October 20, 2016, January 6, 2017, January 25, 2017, February 21, 2017, March 14, 2017, March 24, 2017, April 13, 2017, May 19, 2017, June 20, 2017, July 25, 2017, August 16, 2017, January 31, 2018, and March 6, 2018.  (Dec. Saleh at ¶ 9).  Dr. Saleh communicated with Plaintiff and John Horan through a variety of means during these many appointments, including in-person interpreters. (Dec. Saleh at ¶ 11).  Dr. Saleh has no record or recollection of any objections to his communications or care during this long period of continuous medical treatment.  (Dec. Saleh at ¶ 10).

## V.      LAW AND ARGUMENT

Although Plaintiff has filed this lawsuit against a variety of Defendants, the only medical professional at issue in Plaintiff's claims is employed by UHMG.  Accordingly, judgment should be granted in favor of UHHS, UHAMC, UHCMC, and UPCP on all claims asserted by Plaintiff.

As to UHMG, the relevant and undisputed facts firmly support summary judgment.  As set forth below, Plaintiff cannot meet her burden to prove standing, ineffective communication or deliberate indifference.  Accordingly, summary judgment should be granted to all Defendants and this matter terminated.

A.  **Standard of Review.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Defendants, as the movants, have the burden of proving that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  This Court evaluates the evidence in the light most favorable to Plaintiff when reviewing Defendants' motion.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).  However, the mere scintilla of evidence supporting Plaintiff is not sufficient; there must be evidence on which a jury could reasonably find for Plaintiff in order to deny Defendants' motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Based on this Motion, Defendants have satisfied their initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008).  The burden now shifts to Plaintiff who has the burden to "point to evidence that demonstrates that there is a genuine dispute of material fact for trial."  *Ask Chems., LP v. Comput Packages, Inc.*, 593 Fed. Appx. 506, 508 (6th Cir. 2014).  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'"  *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp. 3d 731, 736 (N.D. Ohio 2015).

B.  **Plaintiff Has Different Burdens For Injunctive Relief And Damages.**

All of Plaintiff's claims are based upon effective communication and are analyzed according to the same liability analysis. *See Budd v. Summit Pointe*, No. 1:19-cv-466, 2020 U.S. Dist. LEXIS 39122, *19 (W.D.  Mich. Feb. 13, 2020) (citing *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824 (11th Cir. 2017) (ADA and Rehabilitation Act claims alleging

effective communication are analyzed under same liability analysis); *see also Prather v. Mirkil*, No. 2:17-cv-00183, 2020 U.S. Dist. LEXIS 64820, *7 (Dist. Nev. Apr. 14, 2020) (citing 42 USCS 18116) (claims under the Affordable Care Act are analyzed using the liability analysis used to analyze Rehabilitation Act claims).

The claims, however, have separate standards for injunctive relief and damages.  With respect to injunctive relief, in order to prevail on her claims, Plaintiff must be able to prove that she was "excluded from participation in or denied the benefits of the hospital's services, programs, or activities, or otherwise was discriminated against on account of [his] disability" *See Budd v. Summit Pointe*, No. 1:19-cv-466, 2020 U.S. Dist. LEXIS 39122, *19 (W.D.  Mich. Feb. 13, 2020) (citing *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824 (11th Cir. 2017). "Such exclusion, denial, or discrimination occurs when a hospital fails to provide appropriate auxiliary aids and services to a deaf patient, or a patient's deaf companion, where necessary to ensure effective communication." *Id.* (internal quotations omitted).

If a plaintiff is able to satisfy their burden with respect to effective communication, the plaintiff may then attempt to establish that they are entitled to monetary damages. *See Budd v. Summit Pointe*, No. 1:19-cv-466, 2020 U.S. Dist. LEXIS 39122, *19 (W.D.  Mich. Feb. 13, 2020) ("proving the failure to provide a means of effective communication, on its own, permits only injunctive relief") (citing *McCullum v. Orlando Reg'l. Healthcare Sys., Inc.*, 768 F.3d 1135 (11th Cir. 2014)).  "To recover monetary damages, a disabled person must further show that the hospital was deliberately indifferent to [his] federally protected rights." *Id.* (citing *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012).

### C.     <u>Plaintiff Lacks Standing To Bring Her Claims Because She No Longer Visits Defendants And Will Not In The Future.</u>

Plaintiff lacks standing to assert her claims because she no longer visits Defendants' facilities for treatment.  The Sixth Circuit has set forth three requirements that must be satisfied in order to obtain injunctive relief:  (1) injury in fact, (2) causation, and (3) redressability.  *ACLU v. NSA*, 493 F.3d 644, 659 (6th Cir. 2007).  "'Injury in fact' is a harm suffered by the plaintiff that is 'concrete and actual or imminent, not conjectural or hypothetical.' 'Causation' is 'a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.' 'Redressability' is 'a likelihood that the requested relief will redress the alleged injury.'"  *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

Plaintiff cannot meet any of these factors.  Plaintiff admits that she ceased visiting UHHS facilities in 2018.  (Dep. Plaintiff at 9-10).  Plaintiff has now elected to seek medical care at Southwest General Health Center rather than UHHS facilities because Southwest General Health Center utilizes in-person interpreters rather than the MARTTI system.  (Dep. Plaintiff at 9-10).  Plaintiff testified that she will not let her husband visit UHHS facilities (Dep. Plaintiff at 11), but Plaintiff John Horan testified that he has seen his UHHS heart doctor from 2012 through the present (Dep. John Horan at 13-15).  In fact, John Horan's UHHS heart doctor always utilizes an in-person interpreter.   (Dep. John Horan at 16).  As to the reason for her change in medical providers, the undisputed facts provide that Plaintiff continued to see Dr. Saleh for two years, on multiple occasions, after allegedly suffering from ineffective communication.  (Dec. Saleh at ¶ 8).

The Sixth Circuit, based on Supreme Court authority, has held that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'"  *Hange v. City of Mansfield*,

257 Fed. Appx. 887, 892 (6ᵗʰ Cir. Dec. 13, 2017) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). In other words, Plaintiff must prove that there is a "substantial likelihood" that she will be subjected to the future to the allegedly illegal policy to have standing to seek injunctive relief. *Hange*, 257 Fed. Appx. at 891; *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11ᵗʰ Cir. 2017) ("To satisfy the injury-in-fact requirement for constitutional standing, a plaintiff seeking injunctive relief in relation to future conduct must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future"); *Cox v. Blue Cross Blue Shield of Mich*, 216 F.Supp.3d 820, 827 (E.D. Mich. 2016) ("[w]ithout an allegation regarding the threat of repeated injury or future harm, constitutional standing to seek an injunction is not made out.") (citing *Hange v. City of Mansfield, Ohio*, 257 F.App'x 887, 891 (6th Cir. 2007) (other citations omitted)).

Finally, as causation, Plaintiff must prove that her injury is "'fairly traceable'" to Defendants' conduct. *Pucci v. Taylor*, 601 F.Supp. 2d 886, 896 (E.D. Mich. 2009). In this case, CP-2, Defendants' interpretive policy, fully complies with the law because it provides "equal access" to all patients. (CP-2, page 1). Plaintiff alleges that some unknown visit in 2016 violated the policy. (Dep. Plaintiff at 15). However, Plaintiff continued to visit Dr. Saleh for the next two years without issue.

Federal courts addressing similar admissions of a plaintiff's decision not to visit the defendant in question have granted summary judgment. *Bates v. Delmar Gardens North, Inc.*, Case No. 4:15-CV-00783-AGF, 2017 U.S. Dist. LEXIS 148160 *17-18 (E.D. Mo. Sept. 13, 2017) ("Plaintiff's mere reference to her age and past hip surgery is insufficient to establish a 'real and immediate' likelihood that she will return to Defendants' facilities, particularly in light of the undisputed evidence that she has no current conditions that cause her to believe that she

will ever need to return to DG North and that she has no intention to so return"); *Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011) (holding that a plaintiff could not "establish real and immediate threat as required for standing" to pursue an injunction against a zoo where she "never indicated that she would return to the Zoo"); *Sunderland v. Bethesda Hosp., Inc*, 686 F. App'x 807, 819 (11th Cir. 2017) (holding that patients in their 70s and 80s lacked standing to pursue injunctive relief against a hospital because "the patients' conditions are stable" and "[a]lthough the patients might some day return to Bethesda for treatment, the evidence does not establish a real and immediate likelihood that they will do so"); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1333-1334 (N.D. Ca. Feb. 2, 1994) ("Mrs. Aikins further states that she owns a mobile home seven miles from St. Helena Hospital and that she stays at the home for several days each year. Aikins Decl. P 2. These allegations do not establish the "real and immediate threat" of future harm that *Lyons* requires. Mrs. Aikins has shown neither that she is likely to use the hospital in the near future, nor that defendants are likely to discriminate against her when she does use the hospital"). Based on these well established authorities, Plaintiff lacks standing to assert her claims and summary judgment should be granted in favor of Defendants.

### D. If Plaintiff Has Standing, Plaintiff Cannot Prove Ineffective Communications.

As set forth above, in order for Plaintiff to satisfy her claims under the ADA, the Rehabilitation Act, and the Affordable Care Act, Plaintiff must be able to show that she (1) was excluded by Defendants from "participation in or denied the benefits of the hospital's services, programs, or activities, or otherwise was discriminated against on account of [his] disability"; and (2) such exclusion, denial, or discrimination resulted from Defendants failing to provide the appropriate auxiliary aids and services where necessary to effectively communicate. *See Budd v.*

*Summit Pointe*, No. 1:19-cv-466, 2020 U.S. Dist. LEXIS 39122, *19 (W.D. Mich. Feb. 13, 2020) (citing *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824 (11th Cir. 2017).

Initially, Plaintiff testified that the result that she desires is to always have an in-person interpreter. (Dep. Plaintiff at 20 ("I prefer an in-person interpret"). However, federal law is clear that deaf patients are not "entitled to an on-site interpreter every time they ask for it." *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 835 (11th Cir. 2017); *see also McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("The regulations do not require healthcare providers to supply any and all auxiliary aids even if they are desired and demanded"); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012) ("construing the regulations in this manner would effectively substitute 'demanded' auxiliary aid for 'necessary' auxiliary aid"); *Juech v. Children's Hosp. & Health Sys.*, 353 F.Supp. 3d 772, 779 (E.D. Wis. 2018) ("Notwithstanding Juech's preference for and expectation that Children's Hospital provide her with an in-person interpreter at all times, it was not required to do so as long as it could provide effective alternative means of communicating with her").

With respect to effective communication, "the relevant inquiry is whether the hospitals' failure to offer an appropriate auxiliary aid impaired the patient's ability to exchange medically relevant information with hospital staff." *See Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 829 (11th Cir. 2017). "The focus is on the effectiveness of the communication, not on the medical success of the outcome." *Id.* Plaintiff cannot satisfy her burden as the undisputed facts show that she effectively communicated with Defendants' staff at all times relevant to Plaintiffs' claims.

Plaintiff and her husband visited UH Parma Medical Associates for family medical care on a regular basis for many years. (Dec. Saleh at ¶6). Plaintiff admits that she and her husband

had many visits to UH Parma Medical Associates.  (Dep. Plaintiff at 14-15).  John Horan recalls visiting Dr. Thomas Gallagher at UH Parma Medical Associates for "many years" before transitioning to Dr. Saleh. (Dep. John Horan at 20).  Dr. Gallagher retired in 2015 and then Plaintiff and John Horan transitioned to Dr. Saleh.  (Dep. John Horan at 20-21).  Plaintiff and John Horan visited Dr. Saleh on numerous occasions in 2016, 2017, and 2018.  (Dec. Saleh at ¶¶ 8-9).

Plaintiff does not have a vivid recollection of the medical visit or visits at issue in this lawsuit.  (Dep. Plaintiff at 13-14).  Plaintiff recalled that it occurred a "long time ago."  (Dep. Plaintiff at 13).  As to the allegations of ineffective communication, Plaintiff takes issue with the fact that Dr. Saleh communicated to her through her husband on visits in 2016.  (Dep. Plaintiff at 15).  John Horan recalls that Dr. Gallagher "did a very good job."  (Dep. John Horan at 21).  The visits with Dr. Saleh, based on John Horan's recollection, "were okay."  (Dep. John Horan at 23-24).  John Horan could not recall any specific visit to Dr. Saleh that was at issue in this lawsuit:

> Q.  Well, before we get to East Hospital I just before we leave Dr. Saleh, can you give me any specific details on any visits that you had with Dr. Saleh that there was a problem?
>
> A.  No.

(Dep. John Horan at 24).

Based on these facts, Plaintiff cannot meet her burden of proving ineffective communication.  Plaintiff and her husband visited UH Parma Medical Associates for many years without objections.  As to the after-the-fact objection, Plaintiff has provided no facts, not even a date, to support her claim of ineffective communication.  Accordingly, because no genuine issue of material fact exists for trial, summary judgment should be granted in favor of Defendants on all claims.

**E.**     **Plaintiff Cannot Show That Defendants Were Deliberately Indifferent Toward Her Due To Her Disability.**

Plaintiff does not seek damages in this lawsuit.  (Dep. Plaintiff at 20-22).  In addition, Plaintiff cannot meet her burden of proving ineffective communication.  However, if damages are considered, Plaintiff cannot meet her burden of proof.

Deliberate indifference occurs when an individual knows that a violation is substantially likely and fails to act on that likelihood.  *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012); *Doe v. Sch. Bd. Of Broward Cnty., Florida*, 604 F.3d 1248, 1259 (11th Cir. 2010).   Deliberate indifference involves an element of 'deliberate choice', which is not met with evidence of mere negligence. *Liese*, 701 F.3d at 344. More specifically, a plaintiff must show the existence of disputed issues of fact on central question of whether an "official" of the hospital made a decision not to supply a live on-site interpreter, knowing that there was a substantial likelihood that the patient would not be able to communicate effectively without this auxiliary aid.  *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1147-48 (11th Cir. 2014).

Plaintiff cannot establish the high burden of deliberate indifference with respect to any of her claims.  As set forth above, Plaintiff has few, if any, facts relating to the appointment at issue.  John Horan was in attendance at the appointment and he cannot recollect any facts that allegedly violate the law.  Accordingly, the undisputed facts firmly demonstrate that Plaintiff cannot prove deliberate indifference and her claim for damages fails as a matter of law.

## VII.    <u>CONCLUSION</u>

Based on the above-cited arguments and authorities, there are no genuine issues of material fact and summary judgment should be entered in favor of Defendants on all claims asserted by Plaintiff.

Respectfully submitted,

*/s/ Donald G. Slezak*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of August, 2020, the foregoing was filed through the Court's CM/ECF electronic filing system. A copy of this filing will be sent to all parties through the court's ECF system. If a party is not registered with the court's ECF system, a true and correct copy will be sent via email and U.S. Mail, postage prepaid, upon the following:

Sean H. Sobel (0086905)
Sobel, Wade & Mapley, LLC
2460 Fairmount Boulevard
Suite 314
Cleveland, OH 44106
Phone: (216) 223-7213
Fax: (216) 223-7213
sobel@swmlawfirm.com

Andrew November (0085018)
Liner Legal, LLC
4269 Pearl Road
Suite 104
Cleveland, OH 44107
Phone: (216) 282-1773
Fax: (216) 920-999
anovember@linerlegal.com

*Attorneys for Plaintiff*

/s/ *Donald G. Slezak*
Donald G. Slezak (0092422)

*One of the Attorneys for Defendants*

4853-2076-4612.1                    18