IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HORAN, et al., | ) | CASE NO. 1:18-CV-02054 |
| | ) | |
| Plaintiffs, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO STRIKE DECLARATION
OF JESSICA LEE AND FOR REASONABLE ATTORNEY'S
FEES PURSUANT TO FED.R.CIV.P. 37(c)(1)**

- 1 -

## TABLE OF CONTENTS

**Page**

I.      BRIEF STATEMENT OF THE ISSUES.................................................................4

II.     SUMMARY OF THE ARGUMENT ……………………………………………....4

III.    PROCEDURAL HISTORY.............................................................................................7

      A.      Judge Boyko Ordered Alternative Rule 26 Disclosures...........................................8

      B.      Plaintiffs Failed To Comply With Judge Boyko's Order.......................................9

      C.      Plaintiffs' Written Discovery Also Did Not Shed Light
             On Plaintiffs' Allegations.......................................................................................10

      D.      Horan Was Deposed Twice And He Provided No Additional Information
             Regarding His Claims.............................................................................................10

      E.      Defendants' Discovery Responses Were Complete..................................................12

      F.      Defendants' Motion For Summary Judgment Is Properly Supported
             And Should Be Granted In Its Entirety....................................................................14

      G.      Defendants' Attempts To Resolve This Dispute......................................................17

IV.     ARGUMENT.............................................................................................................17

      A.      Rule 26(a) Does Not Support Horan's Motion......................................................18

      B.      Rule 26(e) Did Not Require Defendants To Disclose Jessica Lee......................19

      C.      If Jessica Lee Was Required To Be Disclosed, Defendants Can
             Prove The Failure Was Harmless And Was Substantially Justified....................21

V.      CONCLUSION..........................................................................................................22

CERTIFICATE OF SERVICE.........................................................................................23

## **TABLE OF AUTHORITIES**

**Case Law**

*EEOC v. Tecumseh Products Co*., No. C-78-1004, 1980 U.S. Dist. LEXIS 16845, *4-5 (W.D. Tenn. Nov. 28, 1980……………………………………………………20

**Civil Rules Of Procedure**

Fed. R. Civ. P. 26 …………………………………………………………………18, 19, 20

Fed. R. Civ. P. 37………………………………………………………………17, 18, 19, 20

## I.     BRIEF STATEMENT OF THE ISSUES

1.     Whether Rule 26(a) Supports Plaintiffs' Motion;

2.     Whether Rule 26(e) Required The Disclosure Of Jessica Lee;

3.     If Defendants Were Required To Disclose Jessica Lee, Whether The Failure Was Harmless And Was Substantially Justified.

## II.    SUMMARY OF THE ARGUMENT

This lawsuit was initially filed by seven plaintiffs, John Horan, Antoinette Horan, Sonya Washington, Heather Wagley, Sandra Hatibovic, Johnny Parsons, and Samantha Harry ("Plaintiffs").  (ECF # 1).  The seven Plaintiffs were allegedly joined in one lawsuit "to remedy a continuing policy, pattern, or practice of unlawfully discriminating against Deaf and hard of hearing patients. . . ."  (Complaint, ECF # 1, ¶ 1).  The lawsuit was filed against five health organizations:  Defendants University Hospitals Health System, Inc. ("UHHS"), University Hospitals Ahuja Medical Center, Inc. ("UHAMC"), University Hospitals Medical Group, Inc. ("UHMG"), University Hospitals Cleveland Medical Center ("UHCMC"), and University Primary Care Practices, Inc. ("UPCP") (UHHS, UHAMC, UHMG, UHCMC, and UPCP are collectively referred to as "Defendants").  (Complaint, ECF # 1).

Following discovery, the claims asserted by four of the seven Plaintiffs have been dismissed, with prejudice, because their individual claims of ineffective communication lacked merit.  (ECF ## 37, 46, 47, and 48).  As to the remaining three plaintiffs, including Plaintiff John Horan ("Horan"), Defendants have filed motions for summary judgment that are now pending. (ECF ## 51, 52, and 53).  The Horan Motion for Summary Judgment seeks judgment on all claims asserted by Horan and it is based on four deposition transcripts and three declarations. (ECF # 52).  The Horan Motion for Summary Judgment firmly demonstrates that there are no

genuine issues of material fact for trial and Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

Faced with Defendants' Motion for Summary Judgment, Horan has filed a Motion to Strike (the "Motion") that seeks to strike one of the three declarations, the Declaration of Jessica Lee.  (ECF #52, Exhibit #6); (ECF # 54).  Horan argues that Defendants allegedly failed to disclose Jessica Lee as a witness either through the initial disclosures or interrogatory responses and that Lee's Declaration should be stricken.  (ECF # 54).

The Motion should be denied in its entirety.  As set forth below and in Defendants' Motion for Summary Judgment, Horan has failed to meet his discovery and burden of proof obligations.  Judge Christopher A. Boyko was assigned to this case until June 27, 2019.  The Motion to Strike alleges that Defendants did not disclose Jessica Lee in their "Rule 26 initial disclosures."  (Motion at 2).  However, in an attempt to narrow the issues for discovery and to determine if all seven plaintiffs should be joined in one lawsuit, Judge Boyko ordered the parties to opt out of the Rule 26(a) disclosures and to partake in extensive, informal discovery on the claims and policies at issue.  (Minutes of Proceedings, 02/15/19).  Accordingly, Horan's reliance on initial disclosures is misplaced.

As to discovery, despite depositions, requests for admission, and interrogatories, Horan and the other Plaintiffs have never identified the specific medical providers who allegedly failed to provide effective communication.  (Declaration of David Campbell at ¶ 14-15 ("Dec. Campbell at __")).[1]  During the initial phase of discovery, Defendants produced over 1,200 documents, including medical records.  (Dec. Campbell at Ex. 2).  In return, Plaintiffs agreed to provide information regarding the medical visits at issue that included the "physicians and other hospital representatives with which communications occurred."  (Dec. Campbell at Ex. 1).

---

[1] A copy of David Campbell's Declaration is attached hereto as Exhibit 1.

However, despite the agreement, Plaintiffs disclosure merely parroted the vague allegations in the Complaint.  (Dec. Campbell at Ex. 3).  Horan's interrogatories – despite the fact that Horan had access to his medical records -- similarly stated that "Plaintiff John Horan is not aware of the names of any medical professionals he interacted with, saw, or communicated with during the Appointments."  (Dec. Campbell at Ex. 5).

Horan was deposed twice in an attempt to determine the medical appointments and providers at issue.  (Deposition of John Horan on March 5, 2018 at 1 ("First Dep. at ___"))[2]; (Deposition of John Horan on June 25, 2020 at 1 ("Second Dep. at __").[3]  In Horan's first deposition, Horan testified that he was able to effectively communicate during all of his UHHS medical visits.  (First Dep. at 13-15).  The only specific visit that was actually identified by Horan in the first deposition was an emergency room visit for a cough.  (First Dep. at 16).  However, immediately prior to closing the deposition, Horan's counsel stopped the deposition, claiming that Horan was not medically capable of testifying on March 5, 2020 due to his mental capacity.  (First Dep. at 20).

The second deposition was consistent with the first deposition except for Horan changed the medical visit at issue.  (Second Dep. at 26-27).  Horan no longer raised the emergency room visit for the cough, but now alleged that a 2017 valve surgery was at issue.  (Second Dep. at 26-27).  When asked the hospital that performed the valve surgery, Horan recalled "East University Hospital."  (Second Dep. at 26).  When asked where East University Hospital is located, Horan recalled East Cleveland.  (Second Dep. at 26).  When asked what surgeon performed the valve surgery, Horan could not recall the name.  (Second Dep. at 29).  A 2017 valve surgery is not identified in Horan's informal disclosures.  (Dec. Campbell at 19).

---

[2] Cited pages from John Horan's First Deposition are attached hereto as Exhibit 2.
[3] Cited pages from John Horan's Second Deposition are attached hereto as Exhibit 3.

Horan did not have a valve surgery at Defendants' facilities in 2017 and Defendants could have moved for summary judgment on that undisputed fact.  (Dec. Campbell at 19). However, Horan's fellow Plaintiff and wife, Antoinette Horan, recalled the date of the medical procedure as March, 2018.  (Deposition of Antoinette Horan at 11 ("Dep. Antoinette Horan at __")).[4]  It appears that the "valve surgery" was a transcatheter aortic valve replacement ("TAVR").  (Declaration of Jessica Lee at ¶4 ("Dec. Lee at __")).  The TAVR procedure was performed at UHCMC in the Cardiac Cath & EP Labs.  (Dec. Lee at 2).  However, the TAVR procedure required three pre-TAVR medical appointments and one post-TAVR medical appointment.  (Declaration of Angela Davis at ¶ 13 ("Dec. Davis at __")).  It remains unclear what, if any, of these five TAVR-related medical appointments is at issue in this lawsuit.

Jessica Lee's Declaration mirrors the Declaration of Angela Davis.  Both Declarations set forth the TAVR procedure and the communications procedures utilized during the TAVR procedures.  Horan's Motion should be denied because Defendants fully complied with its discovery obligations and Horan has still not even identified the specific medical appointment at issue in this lawsuit.  Accordingly, the Motion should be denied, Jessica Lee's declaration should be considered by this Court when reviewing Defendants' motion for summary judgment, and judgment should be entered in favor of Defendants on all claims asserted by Horan.

## III.  <u>PROCEDURAL HISTORY</u>

Horan's counsel did not meet and confer with Defendants' counsel prior to filing the Motion.  In addition, the Motion does not include any sworn testimony.  Rather, the Motion includes an October, 2019 email addressing a discovery dispute that was resolved by this Court.

---

[4] Cited pages from the deposition of Antoinette Horan are attached hereto as Exhibit 4.

(ECF # 54-1).  A complete statement of the relevant facts and procedural history is set forth below.

### A.     <u>Judge Boyko Ordered Alternative Rule 26 Disclosures.</u>

When initially filed, this lawsuit included seven Plaintiffs.  (ECF # 1).  The seven Plaintiffs alleged that they received ineffective communication during a significant number of medical appointments that spanned over several years and multiple UHHS facilities.  (ECF # 1). The seven Plaintiffs were allegedly joined in one lawsuit "to remedy a continuing policy, pattern, or practice of unlawfully discriminating against Deaf and hard of hearing patients. . . ." (Complaint, ECF # 1, ¶ 1).

The Complaint alleges that CP-53 is Defendants' "primary policy" applicable to interpretative services.  (ECF #1, ¶ 28).  In fact, months after the lawsuit was filed, the only policy presented in Plaintiffs' deposition of Gail Murray, PhD, CCC-A ("Murray") was CP-53. (Deposition of Gail Murray, Ex. 7 (hereinafter "Dep. Murray at __")).[5]  Murray, however, advised Plaintiff that CP-53 had been replaced by CP-2.  (Dep. Murray at 51-52).  Since November, 2017, CP-2 has been UHHS' controlling interpretative services policy.  (Declaration of Christina Rivera ("Dec. Rivera at __") at ¶ 5) (hereinafter "CP-2 at __")).

In addition to their Answer (ECF # 17), Defendants filed a motion to dismiss and a motion to sever (ECF ## 16 and 18).  Judge Christopher A. Boyko was assigned to this case until June 27, 2019.  The Case Management Conference was held on February 15, 2019 with Judge Boyko.  (ECF Minutes of Proceedings, 02/15/19).  Based on the incorrect policy attached to the Complaint and Defendants' motion to sever, Judge Boyko ordered the Parties to not serve traditional initial disclosures under Rule 26, but rather to "conduct discovery focused on Defendant's policy."  (ECF Minutes of Proceedings, 02/15/19).  Judge Boyko explained in the

---

[5] Cited pages from the deposition of Gail Murray are attached hereto as Exhibit 5.

conference that the Parties should informally produce documents and information in order to narrow the issues for discovery.  (Dec. Campbell at 9).  A second status conference was scheduled for April 24, 2019 to review the case after this initial discovery was conducted.  (ECF Minutes of Proceedings, 02/15/19).

### B.    <u>Plaintiffs Failed To Comply With Judge Boyko's Order</u>.

Following the Case Management Conference, counsel for the Parties conferred on the discovery to be produced in response to Judge Boyko's discovery order.  (Dec. Campbell at 10).  On March 1, 2019, following discussions and agreements between counsel, Defendants' counsel sent a letter that set forth the Parties' initial discovery agreements.  (Dec. Campbell at Ex. 1).  Relevant to the Motion, Plaintiffs agreed to provide "Interrogatory responses summarizing the Visits, including dates, reasons for the Visits, communication issues that allegedly occurred, and physicians and other hospital representatives with which communications occurred."  (Dec. Campbell at Ex. 1).

Based on Judge Boyko's Order, Defendants produced 1,254 documents that included medical records, the relevant policies, and communications regarding the policies.  (Dec. Campbell at Ex. 2).  Plaintiffs, in contrast, provided eighteen documents and a letter that parrots the vague allegations set forth in the Complaint regarding the visits at issue.  (Dec. Campbell at 13).  For the vast majority of the responses, Plaintiffs stated:  "Further discovery necessary to identify physicians and other hospital representatives with which communication occurred."  (Dec. Campbell at Ex. 3).

On April 12, 2019, Defendants' raised the deficiencies with Plaintiffs regarding the information regarding Plaintiffs' allegations of ineffective communication.  (Dec. Campbell at Ex. 4).  The medical records produced by Defendants include the names of hundreds of medical

professionals who participated in the treatment of Plaintiffs.  (Dec. Campbell at 15).  However, many of the hospital visits at issue involved multiple tests, overnight stays a the hospital, and numerous communications with Plaintiffs.  (Dec. Campbell at 15).  Without more information from Plaintiffs, the investigation of Plaintiffs' claims require multiple witness interviews of individuals who may have little recollection of the visits beyond the medical records.  (Dec. Campbell at 15).  Plaintiffs, however, never supplemented the information regarding their initial disclosures.  (Dec. Campbell at 14-15).

C.     **Plaintiffs' Written Discovery Also Did Not Shed Light On Plaintiffs' Allegations.**

On April 25, 2019, Defendants' motion to sever was denied.  (ECF # 30).  On April 25, 2019, Judge Boyko held the status conference.  (Minutes of Proceedings at 04/25/19).  Judge Boyko ordered the Parties to begin discovery.  (Minutes of Proceedings at 04/25/19).

Plaintiffs' interrogatory responses provided even less information than their initial disclosures.  (Dec. Campbell at 17).  Interrogatory numbers 7, 8, and 9 asked for information regarding the medical visits at issue, the names of all medical professionals who interacted with Plaintiffs, and the communications at issue in the lawsuit.  (Dec. Campbell at Ex. 5).  Horan did not provide any information regarding the visits at issue beyond emails between his son and Angela Davis, a former Assistant Head Nurse – Structural Heart, at UHCMC and a reference to the medical records produced by Defendants.  (Dec. Campbell at Ex. 5).

D.     **Horan Was Deposed Twice And He Provided No Additional Information Regarding His Claims.**

Horan was deposed twice in an attempt to determine the medical appointments and providers at issue.  (First Dep. at 1); (Second Dep. at 1).  Horan was first deposed on March 5,

2020.  (First Dep. at 1).  Horan's second deposition took place on June 25, 2020.  (Second Dep. at 1).

In Horan's first deposition, Horan confirmed that he worked for the Post Office for thirty years before his retirement.  (First Dep. at 6).  Horan testified that he can read and write English and had no problems communicating during his long Post Office employment through written communications.  (First Dep. at 8).  Horan further testified that he can utilize a video phone, read lips, and speak some English.  (First Dep. at 7).

As to the allegations in this lawsuit, the only mention of Horan's "heart surgery," was that the heart surgery was successful and his doctors told him that his heart is so good that he may live to 100 years old.  (First Dep. at 9).  Horan testified that the heart surgery took place about four years prior to the deposition.  (First Dep. at 10).  Horan testified that he continued to see UHHS physicians in 2020.  (First Dep. at 11).  Horan verified that UHHS has provided him with in-person interpreters in recent years.  (First Dep. at 13).  Horan testified that over the last two or three years, Horan has been provided an in-person interpreter.  (First Dep. at 15).

Prior to in-person interpreters, Horan verified that he was able to effectively communicate in writing.  (First Dep. at 13).  Horan verified that he had no issues with any UHHS physicians or nurses.  (First Dep. at 13).  As to why he filed the lawsuit, Horan testified that it was due to an emergency room to a Parma Hospital visit for a real bad cough.  (First Dep. at 16).  Horan admitted that his wife and son were with him during the visit.  (First Dep. at 16-17).  Horan admitted that his son was able to effectively communicate during the visit.  (First Dep. at 17).

Horan took a break and returned to his deposition.  (First Dep. at 17-18).  Horan returned to the deposition and answered additional questions.  (First Dep. at 18-19).  However,

immediately prior to closing the deposition, Horan's counsel stopped the deposition, claiming that Horan was not medically capable of testifying on March 5, 2020 due to his mental capacity. (First Dep. at 20).

The second deposition was consistent with the first deposition except for Horan changed the medical visit at issue in this lawsuit. (Second Dep. at 26-27). Horan no longer raised the emergency room visit for the cough, but now alleged that a 2017 valve surgery was at issue. (Second Dep. at 26-27). When asked the hospital that performed the valve surgery, Horan recalled "East University Hospital." (Second Dep. at 26). When asked where East University Hospital is located, Horan recalled East Cleveland. (Second Dep. at 26). When asked what surgeon performed the valve surgery, Horan could not recall the name. (Second Dep. at 29). A 2017 valve surgery is not identified in Horan's informal disclosures or in Horan's interrogatory responses. (Dec. Campbell at 18-19).

### E. **Defendants' Discovery Responses Were Complete.**

Consistent with their claim that this lawsuit involves hospital-wide policies, not individual patient issues, Plaintiffs did not depose any of the medical providers at issue. (Dec. Campbell at 20). Rather, Plaintiffs deposed two UHHS administrative employees who are involved in developing and implementing CP-2. (Dec. Campbell at 20).

As to medical visits, Plaintiffs' interrogatories were overbroad and not calculated to lead to the discovery of admissible evidence. (Dec. Campbell at 21). As to the hospital visits, the Plaintiffs' interrogatory requests were not based on the vague visits set forth in the Complaint, but rather Plaintiffs asked: "Identify each visit John Horan made to any UH Facility for medical care between September 7, 2016 and present." (Dec. Campbell at Ex. 6).

Based on UHHS records, Horan had contact with UHHS facilities for medical treatment on 136 occasions from September 7, 2016 to the present.  (Dec. Campbell at 22-24).  These records include 48 ambulatory notes, 24 emergency room visits, 18 heart and vascular studies.  (Dec. Campbell at 22-24).  These 136 occasions do not include Horan's visits to UHHS physicians for normal medical procedures.  (Dec. Campbell at 22-24).  Horan testified that he sees his heart doctor on a regular basis since 2012. (Second Dep. at 14-15).  Horan also saw Dr. Saleh on ten occasions from November 8, 2016 through March 6, 2018.  (Declaration of Dr. Ali Saleh at ¶ 8).  Each of Horan's interrogatories were based on the visits Horan had with UH facilities since September 7, 2016.  (Dec. Campbell at Ex. 6).

Based on Horan's significant number of visits to UHHS facilities since September 7, 2016, Horan's interrogatories were asking for detailed information regarding more than 150 hospital and office visits.  (Dec. Campbell at 22-24 and Ex. 6).  Each of the interrogatory responses included objections and then lengthy answers that discussed the UHHS' interpretative policies, UHHS procedures regarding the policies and internal complaints received from Horan.  (Dec. Campbell at Ex. 6).  UHHS did not identify the hundreds of medical professionals who communicated and treated Horan during his 150 or more visits from September 7, 2016.  (Dec. Campbell at Ex. 6).  Such a list, if even possible to produce, would have taken hundreds of interviews, review of thousands of pages of medical records, and a multi-page narrative response.  (Dec. Campbell at Ex. 6).

Plaintiffs never raised any issues with Defendants' interrogatory responses prior to the filing of the Motion.  (Dec. Campbell at 25).  Similarly, Plaintiffs never requested any additional information from Defendants in order to identify the specific claims at issue in this lawsuit.  (Dec. Campbell at 25).

**F.** **Defendants' Motion For Summary Judgment Is Properly Supported And Should Be Granted In Its Entirety.**

After more than a year of discovery, Horan's allegation of wrongful conduct arose out of a 2017 valve surgery.  (Second Dep. at 26-27).  Horan could not identify the surgeon for the valve surgery.  (Second Dep. at 29).  The 2017 valve surgery was not identified in Horan's informal disclosures or in Horan's interrogatory responses.  (Dec. Campbell at 18-19).  In fact, Horan did not have a 2017 valve surgery at any UHHS facility.  (Dec. Campbell at 18-19).

Summary judgment should be issued in favor of Defendants on Horan's claim simply because Horan cannot prove that Defendants provided him medical treatment for a 2017 valve surgery.  However, in order to leave no doubt that summary judgment should be granted in favor of Defendants, Defendants attempted to determine what surgery Horan was addressing in his deposition.  (ECF # 52).  The motion is supported by three declarations.  (ECF # 52).  The declarations were signed by Christina Rivera (Exhibit 2), Jessica Lee (Exhibit 6), and Angela Davis (Exhibit 7).  (ECF # 52).

Horan does not take issue with the Rivera or Davis declarations.  (ECF # 54).  The Davis and Lee Declarations are consistent.  (ECF # 52, Exhibits 6 and 7).  Davis' declaration addresses the TAVR procedure, the pre-TAVR medical appointments and the post-TAVR medical appointment.  (ECF # 52, Ex. 7).  Jessica Lee is the CMC Manager Cardiac Cath & EP Labs.  (Dec. Lee at 2).  On March 23, 2018, Horan was treated in the Cardiac Cath & EP Labs.  (Dec. Lee at 3).

Defendants were never required to disclose Jessica Lee by name in discovery.  (Dec. Campbell at 26).  Horan's medical records demonstrate that Horan visited the Cardia Cath & EP Labs.  (Dec. Campbell at 26).  The March 23, 2018 medical records identify numerous medical professionals who were involved in Horan's medical treatment.  (Dec. Campbell at

26).  Defendants were under no obligation to identify by name every medical professional and administrator who may have been involved in Horan's UHHS medical treatment from September 7, 2016 to the present.  (Dec. Campbell at 26).

The undisputed evidence firmly supports summary judgment on the TAVR procedure. (ECF # 52).  Antoinette Horan recalled the date of the medical procedure as March, 2018.  (Dep. Antoinette Horan at 11).  Antoinette Horan recalls the procedure was a heart catherization.  (Dep. Antoinette Horan at 11).  Antoinette Horan recalls that the medical professionals in the March, 2018 heart catherization utilized the MARTTI system.  (Dep. Horan at 11).  In addition, Plaintiff's college educated son was present at the heart catherization and assisted in the communications.  (Dep. Antoinette Horan at 11-13).  Antoinette Horan admits that her son was able to effectuate communications between her husband and the medical professionals.  (Dep. Antoinette Horan at 13).  Plaintiff's sons are highly educated, both can hear, and both can communicate through sign language.  (Second Dep. at 35-36).

TAVR is a nonsurgical procedure performed with local anesthesia in which a special catheter (hollow tube) is threaded into a blood vessel through the groin and guided inside the heart.  (Dec. Lee at 7).  This procedure is much less invasive than open heart surgery and enables the implantation of a new heart valve without the need of opening the chest.  (Dec. Lee at 7).  The recovery from TAVR is typically very fast, with most patients spending only one night in the hospital after a successful TAVR.  (Dec. Lee at 8).

To have a TAVR procedure at UHCMC, a patient has to be referred to Cardiac Cath & EP Labs by their treating physician.  (Decl. Lee at 9).  Thereafter, a Structural Health Team gathers substantial information from the referred patient in order to determine that the patient is a candidate for TAVR.  (Dec. Lee at 9).  The Structural Health Team not only reviews the

patient's qualifications, but also thoroughly reviews the TAVR process with the patient. (Dec. Lee at 9). In simple terms, there is substantial time and effort that goes into a preparing a patient for TAVR at UHCMC. (Dec. Lee at 9).

The pre-TAVR evaluation is extensive. (Declaration of Angela Davis at ¶ 9 ("Dec. Davis at __")). The referred patient meets with not only the Structural Health Team, including several doctors to have surgery consultations. (Dec. Davis at 9). The pre-TAVR process includes at least three medical visits and many tests. (Dec. Davis at 9). Prior to actually having the TAVR procedure, the referred patient had a full understanding of the TAVR process. (Dec. Davis at 9). In addition, at the end of each visit during the pre-TAVR process, a clinical summary is provided to the patient that provides further instructions for the next step in the TAVR process and what took place in the visit. (Dec. David at 10).

Plaintiff first met with the Structural Heart Team on January 15, 2018. (Dec. Davis at 13). Thereafter, Mr. Horan met with two cardiac surgeons on March 8, 2018 and March 9, 2018. (Dec. Davis at 13). Finally, after the TAVR procedure, a post-TAVR meeting was held on May 4, 2018. (Dec. Davis at 13). Mr. Horan's wife and son also attended these meetings/consultations. (Dec. Davis at 13). All of the family's questions were answered and Mr. Horan was verified as a qualified candidate for TAVR before the procedure. (Dec. Davis at 13).

The MARTTI system was used for translation services on January 15, 2018, March 9, 2018 and May 4, 2018. (Dec. Davis at 14). On March 8, 2018, due to Plaintiff's son's request, an in-person interpreter was assigned to the consultation. (Dec. Davis at 16). Plaintiff had a successful TAVR procedure on March 23, 2018. (Dec. Davis at 17); (Dec. Lee at 21).

Consistent with the successful procedure, Plaintiff was discharged from UHCMC on March 24, 2018, one day after the TAVR procedure.  (Dec. Davis at 17); (Dec. Lee at 21).

Prior to the TAVR procedure, Plaintiff's son requested an in-person interpreter to attend.  (Dec. Davis at 18).  The son did not provide any reason for the in-person interpreter except for Plaintiff's preference.  (Dec. Davis at 16).  The Structural Heart Team looked into the request, but it was ultimately denied.  (Dec. Davis at 18 and 21).  The TAVR lab has high radiation levels.  (Dec. Lee at 11-12).  Due to these high radiation levels, third parties are not permitted into the TAVR lab.  (Dec. Lee at 12).  The MARTTI system is utilized for the TAVR procedure.  (Dec. Lee at 11-13).  Plaintiff's TAVR records demonstrate that he had effective communication during the TAVR procedure.  (Dec. Lee at 22). In fact, Plaintiff did not raise any issues or problems with the Structural Heart Team or the TAVR process on May 4, 2018 during the post-TAVR meeting.  (Dec. Davis at 17).

> **G.**    **Defendants' Attempts To Resolve This Dispute.**

Prior to opposing the Motion, Defendants' counsel attempted to resolve this dispute by offering to permit Horan to depose Jessica Lee.  (Dec. Campbell at 4).  Counsel advised Horan's counsel of the extent of their interrogatory request and the lack of Rule 26 disclosures. (Dec. Campbell at 4).  Horan rejected this offer to resolve the matter.  (Dec. Campbell at 4).

**IV.**    **ARGUMENT**

The Motion does not cite any federal court decision supporting Plaintiff's position that Lee's declaration should be stricken.  Rather, the Motion simply cites Rule 37(c)(1) and states that "Defendants failed to disclose that Jessica Lee had information relevant to the instant matter. . . ."  (Motion at 3).  The Motion fails as a matter of law and should be denied.

### A.  <u>Rule 26(a) Does Not Support Horan's Motion</u>.

Rule 37(c)(1) requires Horan to prove that Defendants were required to identify Lee "as required by Rule 26(a) or (e) . . . ."  Fed. R. Civ. P. 37(c)(1).  Rule 26(a) requires witness disclosures unless "otherwise stipulated or ordered by the court. . . ."  Fed. R. Civ. P. 26(a).

The Motion alleges that "Defendants did not make any indication, whether through informal discovery or Rule 26 initial disclosures. . ." that Jessica Lee had discoverable information.  (Motion at 2).  As set forth above, Judge Boyko held the Case Management Conference in this matter on February 15, 2019.  (ECF Minutes of Proceedings, 02/15/19).  Based on the incorrect policy attached to the Complaint and Defendants' motion to sever, Judge Boyko ordered the Parties to not serve traditional initial disclosures under Rule 26, but rather to "conduct discovery focused on Defendant's policy."  (ECF Minutes of Proceedings, 02/15/19).

Following the Case Management Conference, counsel for the Parties conferred on the discovery to be produced in response to Judge Boyko's discovery order.  (Dec. Campbell at 10).  On March 1, 2019, following discussions and agreements between counsel, Defendants' counsel sent a letter that set forth the Parties' initial discovery agreements.  (Dec. Campbell at Ex. 1).  Relevant to the Motion, Plaintiffs agreed to provide "Interrogatory responses summarizing the Visits, including dates, reasons for the Visits, communication issues that allegedly occurred, and physicians and other hospital representatives with which communications occurred."  (Dec. Campbell at Ex. 1).

Based on Judge Boyko's order and the Parties' stipulation, Defendants had no obligation to disclose Jessica Lee pursuant to Rule 26(a).  Accordingly, Horan's reliance on initial disclosures should be rejected.

**B.     Rule 26(e) Did Not Require Defendants To Disclose Jessica Lee.**

The second prong of Rule 37(c)(1) is proving that Defendants were required to identify

Lee as required by Rule 26(e) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 37(c)(1).

Rule 26(e)(1) requires:

> A party who has made a disclosure under Rule 26(a) - or who has
> responded to an interrogatory, request for production, or request
> for admission - must supplement or correct its disclosure or
> response: (A) in a timely manner if the party learns that in some
> material respect the disclosure or response is incomplete or
> incorrect, and if the additional or corrective information has not
> otherwise been made known to the other parties during the
> discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Local Rule 26.1 requires attorneys serving discovery requests "to ascertain that they are

applicable to the facts and contentions of the particular case."  Local Rule 26.1 further provides

that "[f]orm discovery pleadings containing requests that are irrelevant to the facts and

contentions of the particular case must not be used."  Horan's interrogatories did not comply

with Local Rule 26.1.

As to medical visits, Plaintiffs' interrogatories were overbroad and not calculated to lead

to the discovery of admissible evidence.  (Dec. Campbell at 21).  As to the hospital visits, the

Plaintiffs' interrogatory requests were not based on the vague visits set forth in the Complaint,

but rather Plaintiffs asked:  "Identify each visit John Horan made to any UH Facility for medical

care between September 7, 2016 and present."  (Dec. Campbell at Ex. 6).  Based on UHHS

records and Horan's deposition testimony, this request encompasses more than 150 physician

appointments, emergency room visits, heart and vascular studies, and ambulatory notes.  (Dec.

Campbell at 22-24).  The Local Rules and Rule 33 of the Federal Rules of Civil Procedure do not

require Defendants to conduct the investigation required of Horan and conduct investigations into 150 medical visits.

Moreover, Horan agreed to provide "Interrogatory responses summarizing the Visits, including dates, reasons for the Visits, communication issues that allegedly occurred, and physicians and other hospital representatives with which communications occurred."  (Dec. Campbell at Ex. 1).  Horan wholly failed to provide this type of information despite months of discovery, access to his medical records, and the ability to depose UHHS current and former employees.

In sum, Horan's interrogatory responses were overbroad and inappropriate.  *EEOC v. Tecumseh Products Co.*, No. C-78-1004, 1980 U.S. Dist. LEXIS 16845, *4-5 (W.D. Tenn. Nov. 28, 1980) ("[a]ny interrogatory which is all-inclusive, too broad and requests 'all of the facts' relative to certain occurrences may not necessarily have to be answered." Holding that "the request for a summary of everything to which each witness was to testify was clearly an attempt to obtain the evidence which plaintiff intends to use during the trial and is improper," as the defendant was not required to prematurely exchange their witnesses in advance of the pretrial date, since "[i]n answer to an interrogatory, a party cannot be required to submit every item of evidence it intends to produce at trial.").  The Federal Rules of Civil Procedure do not permit a plaintiff to provide no evidence to support the claims, to serve overbroad discovery requests and then object to the defendant's presentation of proof.  Consistent with this conclusion, Horan provides no legal support for his novel argument.  Accordingly, Horan cannot prove that Jessica Lee was required to be disclosed pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

**C.**     **If Jessica Lee Was Required To Be Disclosed, Defendants Can Prove The Failure Was Harmless And Was Substantially Justified.**

Based on Rule 26 and the overbroad nature of Horan's interrogatory requests, Defendants were under no obligation to disclose Jessica Lee prior to the motion for summary judgment. However, *if arguendo*, this Court were to find that Horan's interrogatory requests required Defendants to disclose Jessica Lee and hundreds of other witnesses, the Motion should still be denied based on the fact that the failure was harmless and substantially justified.  Fed. R. Civ. P. 37(c)(1) ("*Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless").

Horan does not object to Davis' declaration.  Jessica Lee's declaration mirrors the facts set forth in Davis' declaration.  Accordingly, there is no harm to Horan by this Court considering Jessica Lee's declaration.   In addition, prior to filing this opposition, Defendants offered to permit Horan to depose Lee in return for withdrawing this Motion.  Horan was not interested in this resolution.

In addition to a lack of harm, any failure to identify Lee is substantially justified.  Horan has failed to identify the visits and medical professional at issue in this lawsuit.  Defendants cannot be expected to disclose hundreds of administrative and medical employees in case a plaintiff may change his position and challenge a one of more than 150 visits to UHHS facilities. Moreover, as can be seen in Horan's two depositions, Horan has changed his position on what visits are at issue in this lawsuit.   Accordingly, if this Court were to find that Horan's interrogatory somehow required hundreds of current and former UHHS employees to be disclosed, any failure to disclose Jessica Lee is substantially justified.

**V.**     **CONCLUSION**

Based on the above-cited arguments and authorities, Horan's Motion to Strike should be denied in its entirety.  Defendants have fully complied with their discovery obligations. Moreover, if Jessica Lee was required to be disclosed, the failure to disclose is harmless and substantially justified.  Accordingly, the Motion should be denied, this Court should consider Jessica Lee's declaration when reviewing the motion for summary judgment, and judgment should be entered in favor of Defendants on Horan's claims.

Respectfully submitted,

*/s/ Donald G. Slezak*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2020, the foregoing was filed through the Court's CM/ECF electronic filing system.  A copy of this filing will be sent to all parties through the court's ECF system.  If a party is not registered with the court's ECF system, a true and correct copy will be sent via email and U.S. Mail, postage prepaid, upon the following:

Sean H. Sobel (0086905)
Sobel, Wade & Mapley, LLC
2460 Fairmount Boulevard
Suite 314
Cleveland, OH 44106
Phone: (216) 223-7213
Fax: (216) 223-7213
sobel@swmlawfirm.com

Andrew November (0085018)
Liner Legal, LLC
4269 Pearl Road
Suite 104
Cleveland, OH 44107
Phone: (216) 282-1773
Fax: (216) 920-999
anovember@linerlegal.com

*Attorneys for Plaintiff*

*/s/ Donald G. Slezak*
Donald G. Slezak (0092422)

*One of the Attorneys for Defendants*