IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HORAN, et al., | ) | CASE NO. 1:18-CV-02054 |
| | ) | |
| Plaintiffs, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF DAVID A. CAMPBELL**

I, David A. Campbell, being duly cautioned and sworn, hereby declare as follows:

1.     I am lead counsel for Defendants University Hospitals Health System, Inc. ("UHHS"), University Hospitals Ahuja Medical Center, Inc. ("UHAMC"), University Hospitals Medical Group, Inc. ("UHMG"), University Hospitals Cleveland Medical Center ("UHCMC"), and University Primary Care Practices, Inc. ("UPCP") (UHHS, UHAMC, UHMG, UHCMC, and UPCP are collectively referred to as "Defendants") in the captioned-lawsuit.

2.     I have been lead counsel for Defendants since this lawsuit was filed.  I have been involved in the discovery in this matter since the outset of the lawsuit.

3.     This Declaration is being submitted in response to Plaintiffs' Motion to Strike Declaration of Jessica Lee and for Reasonable Attorney's Fees Pursuant to Fed. R. Civ. P. 37(c)(1) (the "Motion").

4.     Plaintiffs' counsel did not meet and confer with Defendants prior to filing the Motion.  Nonetheless, in attempt to resolve the Motion without the need for a decision from this Court, I reached out to counsel for Plaintiff John Horan ("Horan") to let counsel know the grounds for Defendants' opposition to the Motion.  I also advised Horan's counsel that

Defendants would permit Horan to depose Jessica Lee in return for withdrawing the Motion. Horan rejected this offer.

5.     When initially filed, this lawsuit included seven Plaintiffs.  The seven Plaintiffs alleged that they received ineffective communication during a significant number of medical appointments that spanned over several years and multiple UHHS facilities.  The seven Plaintiffs were allegedly joined in one lawsuit "to remedy a continuing policy, pattern, or practice of unlawfully discriminating against Deaf and hard of hearing patients. . . ." (Complaint, ECF # 1, ¶ 1).

6.     Discovery in this lawsuit did not support the broad allegations set forth in the Complaint.  In fact, four of the plaintiffs have been dismissed with prejudice from this lawsuit because discovery confirmed that their claims lacked merit.

7.     The Complaint alleges that CP-53 is Defendants' "primary policy" applicable to interpretative services.  (ECF #1, ¶ 28).  In fact, months after the lawsuit was filed, the only policy presented in Plaintiffs' deposition of Gail Murray, PhD, CCC-A ("Murray") was CP-53. Murray, however, advised Plaintiff that CP-53 had been replaced by CP-2.  (Dep. Murray at 51-52).  Since November, 2017, CP-2 has been UHHS' controlling interpretative services policy.

8.     Judge Christopher A. Boyko was assigned to this case until June 27, 2019.

9.     The Case Management Conference was held on February 15, 2019 with Judge Boyko.  Based on the incorrect policy attached to the Complaint and Defendants' motion to sever, Judge Boyko ordered the Parties to not serve traditional initial disclosures under Rule 26, but rather to "conduct discovery focused on Defendant's policy."   (ECF Minutes of Proceedings, 02/15/19).  Judge Boyko explained in the conference that the Parties should informally produce documents and information in order to narrow the issues for discovery.  A

second status conference was scheduled for April 24, 2019 to review the case after this initial discovery was conducted.

10.     Following the Case Management Conference, counsel for the Parties conferred on the discovery to be produced in response to Judge Boyko's discovery order.  On March 1, 2019, following discussions and agreements between counsel, Defendants' counsel sent a letter that set forth the Parties' initial discovery agreements.  A copy of the letter is attached as Exhibit 1.  Plaintiffs' counsel never objected to the March 1, 2019 letter or the agreement of counsel set forth in the letter.

11.     Relevant to the Motion, Plaintiffs agreed to provide "Interrogatory responses summarizing the Visits, including dates, reasons for the Visits, communication issues that allegedly occurred, and physicians and other hospital representatives with which communications occurred."

12.     Based on Judge Boyko's Order, Defendants produced 1,254 documents that included medical records, the relevant policies, and communications regarding the policies.  A copy of the cover letter is attached as Exhibit 2.

13.     Plaintiffs, in contrast, provided eighteen documents and a letter that parrots the vague allegations set forth in the Complaint regarding the visits at issue.  A copy of the letter is attached as Exhibit 3.  For the vast majority of the responses, Plaintiffs stated:  "Further discovery necessary to identify physicians and other hospital representatives with which communication occurred."

14.     On April 12, 2019, Defendants' raised the deficiencies with Plaintiffs regarding the information regarding Plaintiffs' allegations of ineffective communication.  A copy of the

letter is attached as Exhibit 4. Plaintiffs never supplemented their disclosures regarding the visits and medical providers at issue in this lawsuit.

15.     The medical records produced by Defendants include the names of hundreds of medical professionals who participated in the treatment of Plaintiffs. However, many of the hospital visits at issue involved multiple tests, overnight stays a the hospital, and numerous communications with Plaintiffs. Without more information from Plaintiffs, the investigation of Plaintiffs' claims require multiple witness interviews of individuals who may have little recollection of the visits beyond the medical records. Plaintiffs, however, never supplemented the information regarding their initial disclosures.

16.     On April 25, 2019, Defendants' motion to sever was denied. On April 25, 2019, Judge Boyko held the status conference. Judge Boyko ordered the Parties to begin discovery.

17.     Plaintiffs' interrogatory responses provided even less information than their initial disclosures. Interrogatory numbers 7, 8, and 9 served on Horan asked for information regarding the medical visits at issue, the names of all medical professionals who interacted with Plaintiffs, and the communications at issue in the lawsuit. Horan did not provide any information regarding the visits at issue beyond emails between his son and Angela Davis, a former Assistant Head Nurse – Structural Heart, at UHCMC and a reference to the medical records produced by Defendants. A copy of Horan's interrogatory responses are attached as Exhibit 5.

18.     Horan was deposed twice in an attempt to determine the medical appointments and providers at issue. As with the interrogatory responses and the informal disclosures, Horan never identified medical providers that allegedly failed to communicate with him in his two depositions. In fact, in Horan's first deposition, Horan admitted that he always effectively

communicated when getting medical care with Defendants.  In his second deposition, Horan alleged that a valve surgery that took place in 2017 was the visit at issue in the lawsuit.

19.     Defendants have no record of any valve surgery in 2017 for Horan.  In addition, a 2017 valve surgery is not identified in Horan's informal disclosures or in Horan's interrogatory responses.

20.     Consistent with their claim that this lawsuit involves hospital-wide policies, not individual patient issues, Plaintiffs did not depose any of the medical providers at issue.  Rather, Plaintiffs deposed two UHHS administrative employees who are involved in developing and implementing CP-2.

21.     As to medical visits, Plaintiffs' interrogatories were overbroad and not calculated to lead to the discovery of admissible evidence.  As to the hospital visits, the Plaintiffs' interrogatory requests were not based on the vague visits set forth in the Complaint, but rather Plaintiffs asked:  "Identify each visit John Horan made to any UH Facility for medical care between September 7, 2016 and present."

22.     Based on UHHS records, Horan had contact with UHHS facilities for medical treatment on 136 occasions from September 7, 2016 to the present.  These records include 48 ambulatory notes, 24 emergency room visits, 18 heart and vascular studies.

23.     These 136 occasions do not include Horan's visits to UHHS physicians for normal medical procedures.  Horan testified that he sees his heart doctor on a regular basis since 2012. Horan also saw Dr. Saleh on ten occasions from November 8, 2016 through March 6, 2018.

24.     Each of Horan's interrogatories were based on the visits Horan had with UH facilities since September 7, 2016.  Based on Horan's significant number of visits to UHHS

facilities since September 7, 2016, Horan's interrogatories were asking for detailed information regarding more than 150 hospital and office visits.  Each of the interrogatory responses included objections and then lengthy answers that discussed the UHHS' interpretative policies, UHHS procedures regarding the policies and internal complaints received from Horan.  UHHS did not identify the hundreds of medical professionals who communicated and treated Horan during his 150 or more visits from September 7, 2016.  Such a list, if even possible to produce, would have taken hundreds of interviews, review of thousands of pages of medical records, and a multi-page narrative response.  A true and correct copy of Defendants' interrogatory responses to Horan is attached as Exhibit 6.

25.     Plaintiffs never raised any issues with Defendants' interrogatory responses prior to the filing of the Motion.  Similarly, Plaintiffs never requested any additional information from Defendants in order to identify the specific claims at issue in this lawsuit.

26.     Defendants were never required to disclose Jessica Lee by name in discovery. Horan's medical records demonstrate that Horan visited the Cardia Cath & EP Labs in March, 2018.  The March 23, 2018 medical records identify numerous medical professionals who were involved in Horan's medical treatment during his visit to the Cath Labs.  Defendants were under no obligation to identify by name every medical professional and administrator who may have been involved in Horan's UHHS medical treatment from September 7, 2016 to the present.

27.     Jessica Lee's declaration is consistent with and mirrors the declaration of Angela Davis.  Horan does not object to Angela Davis' declaration.  Both declarations address the reason why an in-person interpreter cannot be inside of the Cath Lab.

I have read the foregoing declaration and I affirm under penalty of perjury under the laws of Ohio and the United States of America that the foregoing is true and accurate to the best of my knowledge, information, and belief.

_____
David A. Campbell

_____
Date August 31, 2020

# EXHIBIT 1



**Vorys, Sater, Seymour and Pease LLP**
**Legal Counsel**

200 Public Square, Suite 1400
Cleveland, Ohio 44114

216.479.6100 | www.vorys.com

Founded 1909

David A. Campbell
Direct Dial   (216) 479-6168
Direct Fax   (216) 937-3779
Email dacampbell@vorys.com

March 1, 2019

<u>**VIA E-MAIL**</u>

Andrew November
Liner Legal LLC
4269 Pearl Road, Suite 104
Cleveland, OH  44109
anovember@linerlegal.com

<u>**VIA E-MAIL**</u>

Sean H. Sobel
Sobel Wade & Mapley LLC
2460 Fairmount Boulevard, Suite 314
Cleveland, OH  44106
sobel@swmlawfirm.com

Re:     *John Horan, et al. v. University Hospitals Health System, Inc., et al.*
        United States District Court, Northern District of Ohio, Eastern Division
        Case No.  1:18-cv-02054-CAB

Dear Counsel:

This letter will follow-up and confirm our initial discovery agreements in the captioned matter.  If this letter correctly sets out the terms of our agreement, please respond in writing.

As we discussed, the Court has directed the Parties to conduct discovery into the policy during this initial discovery phase.  Based on the Court's directives, the Parties agree that the hospital will gather and produce the following categories of documents:

1.     Medical records for each of the visits addressed in the captioned complaint (hereinafter defined as "Visits");

2.     The current policy as well as all prior versions of the policy since 2014;

3.     Hospital-wide communications issued regarding the policy;

4.     Training documentation relating to the policy; and

5.     Confirmation of whether defendants believe that any of the Visits are not covered by the policy.



**VORYS**
Legal Counsel

March 1, 2019
Page 2

The Plaintiffs have agreed to gather and provide the following documents and information during this initial phase of discovery:

1. Any documents and communications in their possession relating to the Visits;

2. Any documents and communications in their possession relating to communication procedures followed during the Visits; and

3. Interrogatory responses summarizing the Visits, including dates, reasons for the Visits, communication issues that allegedly occurred, and physicians and other hospital representatives with which communications occurred.

As we discussed, once this initial discovery phase is completed, additional discovery can be conducted into the alleged communication issues. Additionally, we will be distributing a proposed protective order early next week. If this letter meets with your approval, please email your agreement as soon as possible.

Sincerely,

David A. Campbell

DAC/gdm

cc: Gregory Scheiderer

# EXHIBIT 2



**Vorys, Sater, Seymour and Pease LLP**
Legal Counsel

200 Public Square, Suite 1400
Cleveland, Ohio 44114

216.479.6100 | www.vorys.com

Founded 1909

Gregory C. Scheiderer
Direct Dial   (216) 479-6117
Direct Fax   (216) 937-3728
Email gcscheiderer@vorys.com

April 8, 2019

**VIA E-MAIL**

Andrew November
Liner Legal LLC
4269 Pearl Road, Suite 104
Cleveland, OH  44109
anovember@linerlegal.com

**VIA E-MAIL**

Sean H. Sobel
Sobel Wade & Mapley LLC
2460 Fairmount Boulevard, Suite 314
Cleveland, OH  44106
sobel@swmlawfirm.com

Re:   *John Horan, et al. v. University Hospitals Health System, Inc., et al.*
United States District Court, Northern District of Ohio, Eastern Division
Case No.  1:18-cv-02054-CAB

Dear Counsel:

Pursuant to the parties' agreement as to the scope of initial discovery, enclosed please find Defendants' initial production for the captioned-matter.  The enclosed production is bates labeled as DEFENDANTS 000001 through DEFENDANTS 001254.

The enclosed production includes the medical records that we were able to locate for each of the visits specifically alleged in the Complaint.  This production can be found at the documents identified as DEFENDANTS 000001 through DEFENDANTS 001218.  Records for all visits identified by the date of the visit, including visits only identified by the month of the visit, are included except for two alleged visits.  We were unable to locate records for the two following alleged visits: (1) Heather Wagley's visit to the University Suburban Health Center on March 30, 2018; and (2) Sandra Hatibovic's visit on behalf of M.P. to University Hospitals Parma Medical Center in September 2017.  Please let us know if the dates were correctly identified for these two visits.

The enclosed production also includes the current communications policy and prior versions of the communications policy that were in effect since 2014.  This production can be found at the documents identified as DEFENDANTS 001219 through DEFENDANTS 001254.

**Columbus  |  Washington  |  Cleveland  |  Cincinnati  |  Akron  |  Houston  |  Pittsburgh**



**Legal Counsel**

April 8, 2019
Page 2

　　　　We continue to search for documents regarding the categories of (1) hospital-wide communications issued regarding the policy; and (2) training documentation relating to the policy.

　　　　We will continue to keep you updated on Defendants' search for responsive documents.  Please do not hesitate to reach out if you have any questions.

Sincerely,

Gregory C. Scheiderer

GCS/gdm

# EXHIBIT 3

# SOBEL, WADE & MAPLEY, LLC
## ATTORNEYS AT LAW

2460 FAIRMOUNT BLVD, SUITE 314
CLEVELAND, OHIO 44106

TEL/FAX: (216) 223-7213
SOBEL@SWMLAWFIRM.COM

April 5, 2019

**By Electronic Mail Only:**
David A. Campbell
Gregory C. Scheiderer
Donald G. Slezak
Vorys, Sater, Seymour and Pease LLP
dacampbell@vorys.com
gcscheiderer@vorys.com
dgslezak@vorys.com

**Re: John Horan, et al. v. University Hospitals Health System, Inc., et al.; 1:18-cv-02054;
Initial Discovery Responses**

Dear Counsel:

Per our agreement memorialized in your March 1, 2019 correspondence, we offer the following
interrogatory responses and documents responsive to your two requests for production of
documents.

First, in response to your interrogatory request of summaries of "the Visits, including dates,
reasons for the Visits, communication issues that allegedly occurred, and physicians and other
hospital representatives with which communications occurred," Plaintiffs provide the following:

1) **John Horan:**
    a. **June 9, 2017 Visit**
        i. **Treatment for cough for several days with wheezing.**
        ii. **Was not provided on-site ASL interpreter or VRI. Ineffective
           communication was attempted through lip reading and passed notes.**
        iii. **Further discovery necessary to identify physicians and other hospital
            representatives with which communication occurred.**
    b. **January 18, 2018 Visit**
        i. **Treatment for cough, chest pain, and shortness of breath.**
        ii. **Was not provided on-site ASL interpreter or VRI. Ineffective
           communication was attempted through passed notes.**
        iii. **Further discovery necessary to identify physicians and other hospital
            representatives with which communication occurred.**
    c. **January 23, 2018 Visit**
        i. **Treatment for shortness of breath.**
        ii. **Was not provided on-site ASL interpreter or VRI. Ineffective
           communication was attempted through passed notes.**
        iii. **Further discovery necessary to identify physicians and other hospital
            representatives with which communication occurred.**
    d. **March 9, 2018 Visit**

David A. Campbell
Gregory C. Scheiderer
Donald G. Slezak
Page 2

        i. **CT Scan and surgical consultation**
       ii. **Was not provided on-site ASL interpreter. Ineffective communication was attempted through VRI.**
     iii. **Dr. Basar Sareyyupoglu; Angela Davis, RN.**
   e. **March 2018 Visit**
        i. **Cardiac Catherization procedure**
       ii. **Was not provided on-site ASL interpreter. Ineffective communication was attempted through VRI and passed notes.**
     iii. **Angela Davis, RN**

2) **Heather Wagley**
   a. **February 2017 Visit**
        i. **Family doctor appointment**
       ii. **Was not provided on-site ASL interpreter or VRI. Ineffective communication was attempted through passed notes and Wagley's Deaf advocate.**
     iii. **Debora Anne DeJoseph, MD**
   b. **February 2018 Visit**
        i. **Family doctor appointment**
       ii. **Was not provided on-site ASL interpreter or VRI. Ineffective communication was attempted through Wagley's Deaf advocate.**
     iii. **Suzana Sarac-Leonard, MD**
   c. **March 30, 2018 Visit**
        i. **Neurology appointment for epilepsy**
       ii. **Was not provided on-site ASL interpreter or VRI. Ineffective communication was attempted through typing on Microsoft Word document.**
     iii. **Nuria Lacuey Lecumberri, MD**

3) **Sonya Washington**
   a. **July 4, 2017 Visit**
        i. **Fractured arm suffered by her minor son.**
       ii. **Was not provided on-site ASL interpreter or functioning VRI. Ineffective communication was attempted through Washington's 19-year-old daughter and passed notes.**
     iii. **Further discovery necessary to identify physicians and other hospital representatives with which communication occurred.**
   b. **November 2017 Visit**
        i. **Severe back pain**
       ii. **Was not provided on-site ASL interpreter or VRI. Ineffective communication was attempted through Washington's 11-year-old son and passed notes.**
     iii. **Further discovery necessary to identify physicians and other hospital representatives with which communication occurred.**
   c. **May 26, 2018 Visit**
        i. **Complications associated with her pregnancy**
       ii. **Was not provided on-site ASL interpreter or functioning VRI. Ineffective communication was attempted through passed notes.**
     iii. **Further discovery necessary to identify physicians and other hospital representatives with which communication occurred.**
   d. **July 17, 2018**
        i. **Complications associated with her pregnancy.**

David A. Campbell
Gregory C. Scheiderer
Donald G. Slezak
Page 3

        ii. **Was not provided on-site ASL interpreter or functioning VRI. Ineffective communication was attempted through passed notes.**

       iii. **Further discovery necessary to identify physicians and other hospital representatives with which communication occurred.**

4) **Sandra Hatibovic**
   a. **September 2017**
      i. **Scheduled primary care visit for her minor daughter.**
      ii. **Was not provided on-site ASL interpreter or VRI. Ineffective communication was attempted through passed notes.**
      iii. **Ryan J. Vogelgesang, MD**
   b. **April 11, 2018**
      i. **Persistent and severe rash suffered by her minor daughter.**
      ii. **Was not provided on-site ASL interpreter or functioning VRI. Ineffective communication was attempted through passed notes.**
      iii. **Further discovery necessary to identify physicians and other hospital representatives with which communication occurred.**

5) **Johnny Parsons**
   a. **September 2017**
      i. **Scheduled primary care visit for his minor daughter.**
      ii. **Was not provided on-site ASL interpreter or VRI. Ineffective communication was attempted through passed notes.**
      iii. **Ryan J. Vogelgesang, MD**
   b. **April 11, 2018**
      i. **Persistent and severe rash suffered by his minor daughter.**
      ii. **Was not provided on-site ASL interpreter or functioning VRI. Ineffective communication was attempted through passed notes.**
      iii. **Further discovery necessary to identify physicians and other hospital representatives with which communication occurred.**

6) **Antoinette Horan**
   a. **March 20, 2018**
      i. **CT Scan on pelvis and abdomen**
      ii. **Was not provided on-site ASL interpreter or VRI. Ineffective communication was attempted through passed notes.**
      iii. **Further discovery necessary to identify physicians and other hospital representatives with which communication occurred.**
   b. **Multiple Primary Care appointments**
      i. **General primary care appointments**
      ii. **Was not provided on-site ASL interpreter or VRI.**
      iii. **Ali Saleh, MD**

7) **Samantha Harry**
   a. **September 30, 2017**
      i. **Child birth**
      ii. **Was not provided on-site ASL interpreter or VRI on October 1, 2017 and October 2, 2017. Ineffective communication was attempted through lip reading and Harry's partner.**
      iii. **Elizabeth Ruzga DNP, CNM; Kim Wypasek, RN, BSN**
   b. **Multiple primary care appointments**
      i. **Primary care appointments for two minor children.**
      ii. **Was not provided on-site ASL interpreter or functioning VRI.**
      iii. **Elizabeth Hagen, M.D.**

David A. Campbell
Gregory C. Scheiderer
Donald G. Slezak
Page 4

Plaintiffs acknowledge their duty to supplement these responses as discovery progresses.

In response to Defendants' requests for production of documents, we have attached Horan, et al. 000001-000018, which are made up of communications between Plaintiff Samantha Harry and UH, and John Horan, II, son of Plaintiff John Horan, and UH concerning communications during subsequent visits to UH for medical care. In addition, we have produced a photograph from Plaintiff John Horan's March 2018 cardiac catherization procedure.

Best,

Sean H. Sobel

# EXHIBIT 4



**Vorys, Sater, Seymour and Pease LLP**
**Legal Counsel**

200 Public Square, Suite 1400
Cleveland, Ohio 44114

216.479.6100 | www.vorys.com

Founded 1909

Gregory C. Scheiderer
Direct Dial (216) 479-6117
Direct Fax (216) 937-3728
Email gcscheiderer@vorys.com

April 12, 2019

**VIA E-MAIL**

Andrew November
Liner Legal LLC
4269 Pearl Road, Suite 104
Cleveland, OH 44109
anovember@linerlegal.com

**VIA E-MAIL**

Sean H. Sobel
Sobel Wade & Mapley LLC
2460 Fairmount Boulevard, Suite 314
Cleveland, OH 44106
sobel@swmlawfirm.com

Re: *John Horan, et al. v. University Hospitals Health System, Inc., et al.*
United States District Court, Northern District of Ohio, Eastern Division
Case No. 1:18-cv-02054-CAB

Dear Counsel:

We received Plaintiffs' initial discovery responses and production pursuant to our agreement as to the scope of discovery, which was memorialized in the letter dated March 1, 2019. As you know, Plaintiff produced only eighteen pages of documents in addition to written interrogatory responses. This correspondence serves to request a complete response to the agreed upon interrogatories and confirmation that Plaintiffs have produced all documents in the agreed upon categories.

Pursuant to the agreement between the parties, during this initial discovery phase, Plaintiffs agreed to provide: (1) Any documents and communications in their possession relating to the visits addressed in the Complaint (the "Visits"); (2) Any documents and communications in their possession relating to communication procedures followed during the Visits; and (3) Interrogatory responses summarizing the Visits, including dates, reasons for the Visits, communication issues that allegedly occurred, and physicians and other hospital representatives with which communications occurred. The purpose of this initial discovery phase was to flush out the details of Plaintiffs' alleged problems and to enable additional investigation and discovery prior to the Court's follow-up status conference. However, after reviewing Plaintiffs' responses, it is appears that Plaintiffs have not fulfilled their duty to gather information during this initial discovery phase.

Columbus | Washington | Cleveland | Cincinnati | Akron | Houston | Pittsburgh



**VORYS**
Legal Counsel

April 12, 2019
Page 2

Regarding item number 3, the interrogatory responses that Plaintiffs agreed to provide, no information outside of a mere recitation of the bare allegations in the Complaint was provided. In fact, in most instances, the sentences appear cut from the Complaint and pasted into the interrogatory response. For example, some of the visits alleged in the Complaint merely state the month of the visit rather than the day, while a few simply allege "multiple" visits without any timeframe. Rather than provide additional information to identify these visits, the interrogatory responses repeat these vague allegations without any timeframe and provide no helpful information. Similarly, outside of repeating the bare allegations of the Complaint, no details of the reasons for the visits, communication issues alleged, or personnel involved are identified. It is obvious that the parties did not agree that the scope of information sought through these interrogatory responses was simply a recitation of language that was already alleged. Please conduct an investigation into Plaintiffs' claims and supplement your response with complete responses so that the parties can report some progress having been made by the time of the Court's April 24 status conference.

Regarding item numbers 1 and 2, Plaintiffs' agreed upon document production, only eighteen pages of documents were produced. These documents relate to only two of the seven Plaintiffs. We understand that, if no documents or communications exist, then no documents or communications can be provided. However, we find it odd that most Plaintiffs have nothing in their possession relating to their hospital visits or the communication procedures followed during their visits. Please either confirm that Plaintiffs have no additional communications and documents or supplement with the responsive documents as soon as possible, but no later than by April 18.

While Plaintiffs appear to have done little to no work in providing information during this initial discovery phase, Defendants have been conducting an extensive review to locate and produce relevant documents. As you know, Defendants produced 1,254 pages of documents, including relevant medical records and policies. Finally, as we informed you in our letter dated April 8, 2019, Defendants continue to search for relevant documents and plan to produce the documents as they become available. Consistent with this intention, enclosed please find additional production of Defendants' communications and training on Defendants' communications policies, which are labeled as DEFENDANTS 001255 to DEFENDANTS 001274. We continue to search for relevant documents and will continue to produce them as they become available.

Finally, as you can see from Defendants' production, Defendants have compliant policies that provide for numerous accommodations to achieve effective communication, including interpreters and remote interpreting. Further, a review of Defendants' extensive medical record production demonstrates that Defendants have implemented their compliant policies and provide effective communication for deaf and non-English speaking patients. While we believe a review of the production demonstrates that this case should proceed no further, in the very least, it demonstrates that Plaintiffs cannot meet the burden required for obtaining



**Legal Counsel**

April 12, 2019
Page 3

monetary damages.   Upon Plaintiffs' supplementation and prior to the April 18 status conference, we hope to have a discussion with you regarding whether Plaintiffs intend continue to pursue this lawsuit or pursue this lawsuit in its current form.

As is set forth above, please supplement Plaintiffs' interrogatory responses and document production.  Defendants will continue to conduct their document review and will continue to produce documents as they become available.  Please let us know if you have any questions.

Sincerely,

Gregory C. Scheiderer

GCS/gdm

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOHN HORAN, et al., | ) CASE NO.  1:18-cv-02054 |
| | ) |
| Plaintiffs, | ) JUDGE PAMELA A. BARKER |
| | ) |
| v. | ) |
| | ) |
| UNIVERSITY HOSPITALS HEALTH | ) |
| SYSTEM, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF JOHN HORAN'S RESPONSES TO DEFENDANT UNIVERSITY
HOSPITALS HEALTH SYSTEM, INC.'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION**

**INTERROGATORY NO. 1:**

Identify all persons answering or contributing to the answers to these interrogatories.

**ANSWER: Plaintiff John Horan.**

**INTERROGATORY NO. 2:**

Besides your attorney, identify all persons with whom you have communicated or whom you have contacted regarding the allegations contained in the Complaint and state when you communicated with or contacted such persons.

**ANSWER: None.**

**INTERROGATORY NO. 3:**

Identify the name, work and home address, telephone number, and e-mail address of all individuals who have knowledge about the facts and circumstances referenced in the Complaint, including a summary of the facts known to each individual identified.

1

**ANSWER: 1) John Horan II, 440-292-6314, 2) Plaintiff Antoinette Horan, 3) UH personnel identified in medical records in possession of Defendants.**

**INTERROGATORY NO. 4:**

State whether you have obtained any oral, written, transcribed, or recorded statement from any person with knowledge of the facts relating to the allegations contained in the Complaint, and, if so, identify the person from whom the statement was obtained, the date the statement was obtained, and describe the content of the statement.

**ANSWER: None.**

**INTERROGATORY NO. 5:**

Identify all documents and ESI that you contend support, refer, reflect or relate to your Appointments, the Defendants, or the allegations contained in your Complaint.

**ANSWER: Other than medical records in possession of the Defendants,  previously produced communications between John Horan II and Defendants, and photograph from Plaintiff John Horan's visit to UH, none.**

**INTERROGATORY NO. 6:**

State whether you kept any diaries, journals, calendars, day planners, organizers, notebooks, recordings, or any other documentation, either written or verbal, during your Appointments, the Defendants, or the allegations contained in your Complaint.  If so, state the

dates covered by the applicable documentation, the subject matter of the documentation, and the location of the documentation.

**ANSWER: None.**

**INTERROGATORY NO. 7:**

Identify with specificity (including the date, facility visited, and reason for the visit) each Appointment to Defendants' facilities for which you allege you were provided ineffective Communication.

**ANSWER: 1) Visit occurred on June 9, 2017 at UH Parma Medical Center for treatment for a persistent cough with wheezing; 2) Visit occurred on January 18, 2018 at UH Parma Medical Center for treatment for cough, chest pain, and shortness of breath; 3) Visit occurred on January 21, 2018 at UH Parma Medical Center for treatment for shortness of breath; 4) Visit occurred on March 9, 2018 at UH Cleveland Medical Center for CT Scan and surgical consultation; and 5) Visit occurred in March 2018 at UH Cleveland Medical Center for Cardiac Catherization procedure.**

**INTERROGATORY NO. 8:**

For each Appointment, identify the names of all, physicians, nurses, medical assistants, and/or individuals with whom you interacted with, saw, or communicated with during or regarding your Appointments.

**ANSWER: Other than medical professionals referenced in medical records in possession of Defendants, Plaintiff John Horan is not aware of the names of any medical professionals he interacted with, saw, or communicated with during the Appointments.**

**INTERROGATORY NO. 9:**

For each Appointment, identify with specificity any communications you made with Defendants in advance of the Appointment regarding notice of your disability or accommodations you requested for the Appointment.

**ANSWER: Documents outlining communications between John Horan II and UH regarding**

3

**accommodation to be made for his father were previously produced. Plaintiff John Horan is not personally aware of any other communication made with Defendants in advance of the Appointments.**

**INTERROGATORY NO. 10:**

Describe <u>with specificity</u> any compensatory damage that you allege you have suffered as a result of the actions of Defendants, indicating the nature of the damage and your calculation of the amount of each item of damage.

**ANSWER: Plaintiff John Horan is seeking compensatory damages in an amount to be determined by a jury to compensate him for the emotional pain, suffering, inconvenience, and mental anguish as a result of Defendants' deliberate indifference in not providing effective communication during the visits he identified in his Response to Interrogatory 7.**

**INTERROGATORY NO. 11:**

For each Appointment for which you are seeking compensatory damage, identify with specificity the facts supporting your claim of Intentional discrimination or Deliberate Indifference regarding your disability or need for effective accommodation.

**ANSWER: Defendants' policies in effect during all visits identified in Plaintiff John Horan's Response to Interrogatory 7 concerning accommodations to be provided to Deaf patients and family members are intentionally discriminatory and/or deliberately indifferent to the rights of Deaf individuals to be provided effective communication. Any portions of Defendants' policies that prescribe accommodations that may lead to effective communication are intentionally not followed by UH medical professionals and were not followed during the visits Plaintiff identified in his Response to Interrogatory 7.**

**INTERROGATORY NO. 12:**

Identify each doctor, psychiatrist, social worker, therapist, counselor, or health care provider whom you have consulted or received treatment from July 1, 2010 through the present at any time for any reason. **Please execute the Medical Release attached hereto for each individual or entity identified in response to this Interrogatory**.

**ANSWER: OBJECT. This Interrogatory is not relevant to any of the Defendants' defenses.**

4

**Further, the request is not proportional to the needs of this case considering that the burden of the requested discovery, including the intrusive nature of requesting all medical records of Plaintiff John Horan unrelated to this matter, outweighs its likely benefit. The importance of the requested material to resolving any issues in this matter is non-existent as Plaintiff John Horan's past medical care is not even tangentially related to the communication issues during his visits referenced in response to Interrogatory 7. Plaintiff John Horan is not in possession of any of the information requested, and is not willing to execute the requested Medical Release due to the foregoing objection.**

**INTERROGATORY NO. 13:**

Identify with specificity each visit (including the date, facility visited, and reason for the visit) to Defendants' facilities, other than those Appointments identified in response to Interrogatory number 7, you have made since January 1, 2014 for medical care for yourself or your minor child.

**ANSWER: Plaintiff John Horan is not personally aware of any additional visits not identified in the Complaint or his Response to Interrogatory 7.**

**INTERROGATORY NO. 14:**

Identify with specificity each visit (including the date, facility visited, and reason for the visit) to any medical facility, other than those Appointments and visits identified in response to Interrogatory numbers 7 and 13, you have made since January 1, 2014 for medical care for yourself or your minor child.

**ANSWER: OBJECT. This Interrogatory is not relevant to any of the Defendants' defenses. Further, the request is not proportional to the needs of this case considering that the burden of the requested discovery, including the intrusive nature of requesting information of all medical visits of Plaintiff John Horan unrelated to this matter, outweighs its likely benefit. The importance of the requested information to resolving any issues in this matter is non-existent as Plaintiff John Horan's past medical care is not even tangentially related to the communication issues during his visits referenced in response to Interrogatory 7.**

**INTERROGATORY NO. 15:**

For each visit identified in response to Interrogatory number 14, identify whether you

believe effective Communication was provided.

**ANSWER: OBJECT. This Interrogatory is not relevant to any of the Defendants' defenses. Further, the request is not proportional to the needs of this case considering that the burden of the requested discovery, including the intrusive nature of requesting information of all medical visits of Plaintiff John Horan unrelated to this matter, outweighs its likely benefit. The importance of the requested information to resolving any issues in this matter is non-existent as Plaintiff John Horan's past medical care is not even tangentially related to the communication issues during his visits referenced in response to Interrogatory 7.**

**INTERROGATORY NO. 16:**

For each visit identified in response to Interrogatory numbers 13 and 14, identify the methods of Communication used and accommodations provided for your disability.

**ANSWER: OBJECT. This Interrogatory is not relevant to any of the Defendants' defenses. Further, the request is not proportional to the needs of this case considering that the burden of the requested discovery, including the intrusive nature of requesting information of all medical visits of Plaintiff John Horan unrelated to this matter, outweighs its likely benefit. The importance of the requested information to resolving any issues in this matter is non-existent as Plaintiff John Horan's past medical care is not even tangentially related to the communication issues during his visits referenced in response to Interrogatory 7.**

**INTERROGATORY NO. 17:**

For each visit identified in response to Interrogatory numbers 13 and 14, identify the names of all, physicians, nurses, medical assistants, and/or individuals with whom you interacted with, saw, or communicated with during or regarding your visit.

**ANSWER: OBJECT. This Interrogatory is not relevant to any of the Defendants' defenses. Further, the request is not proportional to the needs of this case considering that the burden**

of the requested discovery, including the intrusive nature of requesting information of all medical visits of Plaintiff John Horan unrelated to this matter, outweighs its likely benefit. The importance of the requested information to resolving any issues in this matter is non-existent as Plaintiff John Horan's past medical care is not even tangentially related to the communication issues during his visits referenced in response to Interrogatory 7.

**INTERROGATORY NO. 18:**

For each visit identified in response to Interrogatory numbers 13 and 14, identify with specificity any communications you made with Defendants in advance of the Appointment regarding notice of your disability or accommodations you requested for the Appointment.

**ANSWER: OBJECT. This Interrogatory is not relevant to any of the Defendants' defenses. Further, the request is not proportional to the needs of this case considering that the burden of the requested discovery, including the intrusive nature of requesting information of all medical visits of Plaintiff John Horan unrelated to this matter, outweighs its likely benefit. The importance of the requested information to resolving any issues in this matter is non-existent as Plaintiff John Horan's past medical care is not even tangentially related to the communication issues during his visits referenced in response to Interrogatory 7.**

**INTERROGATORY NO. 19:**

Identify each doctor, psychiatrist, social worker, therapist, counselor, or health care provider whom you have consulted or received treatment from at any time for emotional distress, pain, or anguish. **Please execute the Medical Release attached hereto for each individual or entity identified in response to this Interrogatory**.

**ANSWER: None.**

**INTERROGATORY NO. 20:**

Identify all persons whom you intend to call as witnesses at any trial or hearing of this action, and, for each, describe the expected subject matter of each person's testimony.

**ANSWER: See Response to Interrogatory 3.**

7

**INTERROGATORY NO. 21:**

Identify with specificity all alleged Adverse Medical Consequences.

**ANSWER: Plaintiff John Horan suffered emotional pain, suffering, inconvenience, and mental anguish as a result of the lack of effective communication during the visits identified in Interrogatory 7.**

**INTERROGATORY NO. 22:**

State whether you or your attorney have employed or obtained or expect to use any person as an expert witness in this lawsuit.  If so, identify each person whom you expect to use as an expert witness, and describe the field of expertise in which each such expert witness is expected to testify, the qualifications of such expert witness, the substance of the facts and opinions to which each person named above as an expert witness is expected to testify, and provide a summary of the grounds for each opinion to be provided by each person named above as an expert witness.

**ANSWER: None at this time.**

**INTERROGATORY NO. 23:**

Identify and describe all documents or ESI you intend to rely upon or use as an exhibit in any motion, hearing, or trial in this action.

**ANSWER: Other than documents identified in Interrogatory 5, none at this time.**

8

**INTERROGATORY NO. 24:**

Describe, with specificity, your alleged disability and the limitations on your life activities imposed by the alleged disability.

**ANSWER: Plaintiff John Horan is Deaf, which limits his ability to hear, speak, read, learn, and communicate.**

**INTERROGATORY NO. 25:**

If you have ever been arrested or convicted of a criminal offense (including misdemeanors, but not including minor traffic violations), for each such circumstance state the date of the arrest/conviction, name of arresting/convicting entity, case number and charge if applicable.

**ANSWER: OBJECT. This Interrogatory is not relevant to any of the Defendants' defenses. Without waiving the foregoing objection, Plaintiff provides the following response: None.**

**INTERROGATORY NO. 26:**

If you have ever been a party to in a civil lawsuit or proceeding, for each such lawsuit or proceeding state the court name, case number, and claims alleged.

**ANSWER: Plaintiff John Horan was a party in a civil disability lawsuit in 1967, but does not possess any additional information about the claim.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All documents and ESI that refer, reflect, or relate to your Appointments, Defendants, or the allegations and claims contained in your Complaint.

**RESPONSE: Other than documents previously produced, no responsive documents.**

**REQUEST FOR PRODUCTION NO. 2:**

All documents and ESI retained on social networking sites, including but not limited to, Facebook, MySpace, LinkedIn, and Twitter, that refer, reflect or relate to your Appointments, Defendants, or the allegations and claims contained in your Complaint.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 3:**

Produce each and every calendar, journal, diary, notation, or any other document, including electronic documents and e-mails, in which you recorded information relating to any of the Defendants, your Appointments, Defendants, or the allegations and claims contained in your Complaint, or any claimed item of damage.

**RESPONSE: Other than documents previously produced, no responsive documents.**

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications identified in your responses to Defendant's Interrogatories.

**RESPONSE: Other than documents previously produced, no responsive documents.**

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications relating to any notice you provided to Defendants of your alleged disability or need for accommodation at any of the Appointments.

**RESPONSE: Other than documents previously produced, no responsive documents.**

**REQUEST FOR PRODUCTION NO. 6:**

All documents and ESI that you believe support the claim that Defendants displayed Intentional Discrimination or Deliberate Indifference.

**RESPONSE: Other than documents previously produced, no responsive documents.**

**REQUEST FOR PRODUCTION NO. 7:**

All documents and ESI that refer, reflect, or relate to any contacts or communications between you and any person (other than your attorney), including Defendants, its former or present agents, representatives, employees, and customers, concerning your Appointments, Defendants, or the facts, allegations and claims contained in your Complaint.

**RESPONSE: Other than documents previously produced, no responsive documents.**

**REQUEST FOR PRODUCTION NO. 8:**

All declarations, affidavits, or sworn or unsworn statements from any individual you consider or believe to have knowledge relevant to the claims in your Complaint.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 9:**

All documents and ESI which refers, reflects or relates to each item of damages that you allege was caused by the actions of Defendants, or any of Defendants' agents, including, without limitation, any documents concerning attorneys' fees for this action and any documents relating to Adverse Medical Consequences.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 10:**

All documents and ESI related to medical, psychological or other professional services including bills, arising from any treatment that you have sought or received for any reason from July 1, 2010 through the present.

**RESPONSE: OBJECT. This request is not relevant to any of the Defendants' defenses. Further, the request is not proportional to the needs of this case considering that the burden of the requested discovery, including the intrusive nature of requesting all medical records of Plaintiff unrelated to this matter, outweighs its likely benefit. The importance of the requested material to resolving any issues in this matter is non-existent as Plaintiff's past medical care is not even tangentially related to the communication issues during the visits identified in Interrogatory 7. Plaintiff John Horan is not in possession of any of the documents requested.**

12

**REQUEST FOR PRODUCTION NO. 11:**

All documents and ESI related to medical, psychological or other professional services including bills, arising from any treatment that you have sought or received for emotional distress at any time.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 12:**

All documents and ESI that you receive in response to any subpoena that you issue in this case.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 13:**

All documents and ESI that refer or relate to any other charges, complaints, lawsuits, or other legal proceedings that you have filed or in which you have ever been involved, including, but not limited to, any document(s) indicating the identity of your attorney(s) in that matter, the attorney(s) for the opposing parties in that matter, any pleadings or other documents filed with the Court in that matter and any deposition transcripts in that matter.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 14:**

All documents and ESI that refer, reflect, or relate to any prior criminal conviction or criminal record including, but not limited to, any document(s) indicating the type of offense committed, any pleadings or other documents filed with the Court in that matter, and any document indicating any fine or prison sentence entered against you.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 15:**

All documents and ESI sent to or received from any experts for purposes of or related to this action, including, but not limited to, expert reports, opinion letters, or any documents and ESI reviewed or relied upon by the experts.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 16:**

For each expert witness you have retained in connection with this action, such witness's curriculum vitae.

**RESPONSE: No responsive documents.**

**REQUEST FOR PRODUCTION NO. 17:**

All documents or ESI that you intend to introduce as exhibits at trial or depositions in this case, or that you intend to use as exhibits to any motion filed in this action.

**RESPONSE: Other than documents previously produced, no responsive documents.**

**REQUEST FOR PRODUCTION NO. 18:**

All documents and ESI that Plaintiff reviewed or relied on in answering Defendants' interrogatories that have not been produced in response to any other document request stated herein.

**RESPONSE: No responsive documents.**

Respectfully Submitted,

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)
Sobel, Wade & Mapley, LLC
2460 Fairmount Boulevard, Ste 314
Cleveland, Ohio 44106
T: (216) 223-7213
F: (216) 223-7213
sobel@swmlawfirm.com

/s/ *Andrew November*
Andrew November (0085018)
Liner Legal, LLC
4269 Pearl Road, Ste 104
Cleveland, Ohio 44107
T: (216) 282-1773
F: (216) 920-999

anovember@linerlegal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2019, a copy of the foregoing *Plaintiff John Horan's Responses to Defendant University Hospitals Health System, Inc.'s First Set of Interrogatories and Request for Production of Documents* was sent via electronic mail to the following counsel of record:

David A. Campbell
Donald G. Slezak
LEWIS BRISBOIS
David.A.Campbell@lewisbrisbois.com
Donald.Slezak@lewisbrisbois.com

*Attorneys for Defendants*

/s/ *Sean H. Sobel*
*Attorney for Plaintiffs*

16

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HORAN, et al., | ) | CASE NO. 1:18-CV-02054 |
| | ) | |
| Plaintiffs, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS UNIVERSITY HOSPITALS HEALTH SYSTEM, INC.'S, UNIVERSITY HOSPITALS MEDICAL GROUP, INC.'S, UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER'S, AND UNIVERSITY PRIMARY CARE PRACTICES, INC.'S RESPONSES TO PLAINTIFF JOHN HORAN'S INTERROGATORIES**

---

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Defendants University Hospitals Health System, Inc. ("UHHS"), University Hospitals Ahuja Medical Center, Inc. ("UHAMC"), University Hospitals Medical Group, Inc. ("UHMG"), University Hospitals Cleveland Medical Center ("UHCMC"), and University Primary Care Practices, Inc. ("UPCP") (UHHS, UHAMC, UHMG, UHCMC, and UPCP are, collectively, "Defendants"), hereby submit the following responses and objections to Plaintiff John Horan's ("Plaintiff" or "Horan") Interrogatories to Defendants (the "Discovery Requests"):

**GENERAL STATEMENT AND OBJECTIONS**

1.    Each response herein is made subject to all objections as to competence, relevance, materiality, propriety and admissibility, as well as any and all other objections and

grounds which require the exclusion of evidence.  Defendants reserve the right to make any and all such objections at trial and at any other proceeding relating to this action.

2.      No incidental or implied admissions are intended by Defendants' responses.  The fact that Defendants have responded to any request should not be construed as an admission that Defendants accept or admit the existence of any facts set forth or assumed by such request, or that the making of a response constitutes admissible evidence.  The identification and/or production of any documents shall not constitute a waiver by Defendants of any attorney-client privilege, work product privilege, confidentiality or any other applicable privilege.

3.      Plaintiff's Discovery Requests may cover communications between or documents exchanged by Defendants and their legal counsel, as well as other material covered by the attorney-client privilege, or by a restriction against production provided in federal or state law. To the extent the identity of such documents and the substance of such communications are sought generally by Plaintiff, Defendants object thereto on the ground that such information is protected by the attorney-client privilege and is not within the scope of discoverable information and therefore is not otherwise discoverable.

4.      Plaintiff's Discovery Requests may cover the subject matter of documents reflecting the impressions, conclusions, opinions, or legal research or theories of Defendants' legal counsel and consultants employed to prepare for litigation.  To the extent that such information or the identity or the substance of such documents is sought generally by Plaintiff, Defendants object thereto on the ground that such information is protected by the work product privilege.

5.      Defendants object to all of Plaintiff's Discovery Requests to the extent they incorporate Plaintiff's definitions and instructions that purport to compel Defendants to comply with discovery, or impose obligations, beyond the scope of the Federal Rules of Civil Procedure.

6.      Defendants object to all of Plaintiff's Discovery Requests to the extent they call for confidential, proprietary and/or trade secret information, including information that is marked confidential or deemed confidential by the terms of the protective order.  To the extent any such or similar information may be produced, it will be subject to a suitable protective order.

7.      Defendants object to the Discovery Requests to the extent that they are unlimited in temporal or geographic scope.

8.      Defendants object to any defined or undefined terms in the Discovery Requests that differ from how Defendants use such terms in its ordinary course of business, and any response or use of such terms in these responses does not constitute a waiver of any objections regarding the definition or scope of such terms.

9.      An objection to a specific document request does not imply that documents responsive to the request exist. By responding to Plaintiff's requests, Defendants do not admit, adopt, or acquiesce in any factual or legal contention, assertion, or characterizations contained in any Discovery Request.

10.     In making these objections, Defendants do not in any way waive or intend to waive, but rather intends to preserve and is preserving the following, should it become appropriate:

a.      all objections to the competency, relevancy, materiality, and admissibility of any information that may be produced and disclosed in response to the Discovery Requests;

b.     all rights to object on any ground to the use of any information that may be produced or disclosed in response to the Discovery Requests, or the subject matter thereof, in any subsequent proceedings, including the trial of this action; and

c.     all rights to object on any ground to any request for further responses to the Discovery Requests or any other discovery requests from Defendants.

11.    Defendants' research, investigation, discovery and analysis are continuing.  These responses are based on information presently known and available.  Defendants reserve the right to make changes in his responses or to present new and additional information at trial, to correct errors or omissions, to reflect more accurate information or to include subsequently discovered facts concerning matters covered by Plaintiff's Discovery Requests.

12.    Subject to any objections asserted herein, Defendants will produce the documents as specified in these responses to the extent that it is able to locate such documents after a diligent search of all areas where it would reasonably expect to find such documents. Unless otherwise specified herein, Defendants specifically object to searching for responsive documents located on back-up tapes; for any deleted data; for any shadowed, deleted, or fragmented electronic files on the grounds that any request for such documents is unduly burdensome.

Subject to and without waiving the foregoing general objections, Defendants responds to the Discovery Requests as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify each visit John Horan made to any UH Facility for medical care between September 7, 2016 and present.

**ANSWER:**

Defendants object to Interrogatory No. 1 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "visit", "UH Facility", and "medical care."  Defendants further object to this Request on the ground that Plaintiff is already in possession of this information and Plaintiff should have produced this information to Defendants.  Defendants further object to this request to the extent that this information is within the control of Plaintiff – Plaintiff knows when he visited UH Facilities.  Subject to and without waiving the foregoing general and specific objections, Defendants state: *see* documents produced during this litigation. Further answering, Defendants state that Plaintiff's medical records indicate that he received treatment at the following facilities: UH Parma Medical Center, UH Case Medical Center, UHCMC, as well as any other UH facility identified in Plaintiff's medical records produced during this lawsuit.  Further answering, Plaintiff had one emergency room visit and numerous physician office visits with UH facilities since the lawsuit was filed.  Defendants have no records of any internal incidents or complaints from Plaintiff since January of 2018.


**INTERROGATORY NO. 2:** Identify Defendants' policy(s), oral or written, for providing auxiliary aids and services, and reasonable accommodations for deaf and hard of hearing individuals at all times between September 7, 2016 to the present, including any policies on how to determine which auxiliary aid or services are provided.

**ANSWER:**

Defendants object to Interrogatory No. 2 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Request on the grounds that it is vague and ambiguous with respect to the terms "policy(s)", "auxiliary aids and services", and "reasonable accommodations".  Defendants further object to this request to the extent that Plaintiff is already in possession of this information.  Subject to and without waiving the foregoing general and specific objections, Defendants state: *see* documents produced during this lawsuit.  Further answering, Defendants state that they have implemented the following policies: C P-2 Access to Interpretive Services (formerly CP-53 & 57); and CP-53 Hearing or Sensory-Impaired Persons; CP-57 – Foreign Language Translators (collectively referred to as the "Policies").  Further answering, Defendants state: *see* documents produced herewith that include website information and postings regarding the relevant policies, UH practices, and complaint procedures available to UH patients.

**INTERROGATORY NO. 3:** For each visit identified in Interrogatory No. 1, explain how Defendants followed the policy identified in Interrogatory No. 2 in effect at the time of each visit.

**ANSWER:**

Defendants object to Interrogatory No. 2 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "Interrogatory No. 1", "visit" and "policy."  Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more

appropriately suited for a deposition.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.

Further answering, Defendants state that it has established the Policies, which set forth procedures for effective communication with persons who are hearing impaired.  The Policies are consistent with state and federal laws and regulations.  Defendants regularly provide training to medical staff and to their employees on the Policies.  In conjunction with the Policies, Defendants also provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, and further provide these individuals with equal opportunity to benefit from Defendants' services.  Examples of auxiliary aids provided by Defendants are VRI equipment and live interpreters.  Defendants effectively communicated with Plaintiff in a manner which was consisted with the Policies, and all applicable federal and state laws, and Plaintiff's medical records reflect that such communication was effective and that Plaintiff was provided with equal opportunity and meaningful access to Defendants' services.

Further answering, Defendants states *see* documents produced herewith.  The documents produced demonstrate that each UH Facility has a MARTI contact person and that UH only received two complaints from Plaintiff regarding the MARTI system despite multiple visits to UH.  Plaintiff's treating physicians had effective communication with Plaintiff, but interpreters were provided when requested.  Defendants fully complied with the Policies and the law when providing treatment to Plaintiff.

Finally, as to Plaintiff's post-lawsuit visits, Defendants have received no internal complaints from Plaintiff.  It is evident that Plaintiff can effectively communicate with his UH treating professionals and has had no medical issues at any time due to alleged communication issues.

**INTERROGATORY NO. 4:** For each visit identified in Interrogatory No. 1, explain in detail the factual basis and reason Defendants did not provide a qualified American Sign Language interpreter to Plaintiff.

**ANSWER:**

Defendants object to Interrogatory No. 3 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "Interrogatory No. 1", "visit" and "qualified."  Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.

Further answering, Defendants state that it has established the Policies, which set forth procedures for effective communication with persons who are hearing impaired.  The Policies are consistent with state and federal laws and regulations.  Defendants regularly provide training to medical staff and to their employees on the Policies.  In conjunction with the Policies, Defendants also provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, and further provide these individuals with equal opportunity to benefit from Defendants' services.  Examples of auxiliary aids provided by Defendants are VRI equipment and live interpreters.  Defendants effectively communicated with Plaintiff in a manner which was consisted with the Policies, and all applicable federal and state laws, and Plaintiff's medical records reflect that such communication was effective and that Plaintiff was provided with equal opportunity and meaningful access to Defendants' services.

Further answering, Defendants states see documents produced herewith.  The documents produced demonstrate that each UH Facility has a MARTI contact person and that UH only

received two complaints from Plaintiff regarding the MARTI system despite multiple visits to UH.  Plaintiff's treating physicians had effective communication with Plaintiff, but interpreters were provided when requested.  Defendants fully complied with the Policies and the law when providing treatment to Plaintiff.

**INTERROGATORY NO. 5:** Identify the individual(s) who were responsible for implementing, exercising, or applying Defendants' policies for providing auxiliary aids and services, and reasonable accommodations for each of John Horan's visits at all times between September 7, 2016 to the present.

**ANSWER:**

Defendants object to Interrogatory No. 5 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "implementing", "exercising", "applying", "policies", "auxiliary aids and services", "reasonable accommodations", and "visit". Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition.  Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.  Further answering, Defendants state that a certain individual is responsible for ensuring effective communication pursuant to the Policies when such communication is required and/or requested.  Defendants are currently obtaining information as to the individual responsible for ensuring effective communication pursuant to the Policies with respect to Plaintiff's visits and will supplement this Interrogatory. Further answering, the medical

records speak for themselves. A variety of medical professionals and visits are at issue in this lawsuit and information as to the specific details with respect to communication with Plaintiff is better requested through a deposition. Further answering, Defendants state: *see* documents produced that outline the UH representatives at each UH Facility who is responsible for the MARTI system. UH developed the Policies and the use of MARTI system based on the expertise of Gail Murray, Ph.D, CCC-A, Director, Audiology Services for University Hospitals – Cleveland Medical Center. The interpretive services offered at the time were reviewed as well as options that new technologies offered. Gail Murray was in charge of the implementation of the MARTI system until 2016 when the Chief Nursing Officer, Jean Blake, took over responsibility for the MARTI system and the Policies. The current Chief Nursing Officer is Jason Pirtz.

**INTERROGATORY NO. 6:** Identify every individual who wrote or otherwise contributed to any handwritten/typed notes used to communicate with Plaintiff for any visit identified in Interrogatory No. 1.

**ANSWER:**

Defendants object to Interrogatory No. 6 on the grounds that it is overly broad and unduly burdensome. Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "communicate" and "visit". Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition. Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory. Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit. Further answering, the medical records speak for themselves. A variety of medical

professionals and visits are at issue in this lawsuit and information as to the specific details with respect to communication with Plaintiff is better requested through a deposition.  Further answering, *see* documents produced that detail Plaintiff's complaints and the individuals responsible for responding to the complaints.

**INTERROGATORY NO. 7:** Identify all individual(s) who received a request from Plaintiff or on behalf of Plaintiff for an interpreter or otherwise discussed an interpreter in any way, specifying the date, time, details and circumstances surrounding how the request(s) were made.

**ANSWER:**

Defendants object to Interrogatory No. 7 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "request" and "interpreter". Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition. Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory and is in control of this information. Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit. Further answering, the medical records speak for themselves.  A variety of medical professionals and visits are at issue in this lawsuit and information as to the specific details with respect to communication with Plaintiff is better requested through a deposition.  Further answering, *see* documents produced that detail Plaintiff's complaints and the individuals responsible for responding to the complaints.

**INTERROGATORY NO. 8:** For each individual identified in response to Interrogatory No. 7, describe in detail all actions taken by the individual(s) in response to the request(s) or discussions for interpreters.

**ANSWER:**

Defendants object to Interrogatory No. 8 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "Interrogatory No. 7", "request" and "interpreters". Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition. Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory. Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.

Further answering, Defendants state that it has established the Policies, which set forth procedures for effective communication with persons who are hearing impaired.  The Policies are consistent with state and federal laws and regulations.  Defendants regularly provide training to medical staff and to their employees on the Policies.  In conjunction with the Policies, Defendants also provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, and further provide these individuals with equal opportunity to benefit from Defendants' services.  Examples of auxiliary aids provided by Defendants are VRI equipment and live interpreters.  Defendants effectively communicated with Plaintiff in a manner which was consisted with the Policies, and all applicable federal and state laws, and Plaintiff's medical records reflect that such communication was effective and that Plaintiff was provided with equal opportunity and meaningful access to Defendants' services.

As to Plaintiff, Plaintiff's treating professionals were able to effectively communicate with Plaintiff with no objections.  Plaintiff's advocates raised issues.  The first issue advised UH that Plaintiff simply wanted to notify UH management of the issue.  On the second occasion, interpreters were requested and UH provided the interpretive services to Plaintiff.  At no time did Plaintiff raise issues with his ability to effectively communicate, with or without live interpreters.

**INTERROGATORY NO. 9:** State all reasons and each factual basis that Defendants believe or believed that writing notes back and forth between any individual(s) providing care or treatment to Plaintiff would result in effective communication with Plaintiff while being treated by Defendants.

**ANSWER:**

Defendants object to Interrogatory No. 9 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "effective" and "communication". Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition. Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.

Further answering, Defendants state that it has established the Policies, which set forth procedures for effective communication with persons who are hearing impaired.  The Policies are consistent with state and federal laws and regulations.  Defendants regularly provide training to medical staff and to their employees on the Policies.  In conjunction with the Policies,

Defendants also provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, and further provide these individuals with equal opportunity to benefit from Defendants' services.  Examples of auxiliary aids provided by Defendants are VRI equipment and live interpreters.  Defendants effectively communicated with Plaintiff in a manner which was consisted with the Policies, and all applicable federal and state laws, and Plaintiff's medical records reflect that such communication was effective and that Plaintiff was provided with equal opportunity and meaningful access to Defendants' services.

**INTERROGATORY NO. 10:** State all reasons and each factual basis that Defendants believe or believed that communicating through Plaintiff's family member(s) would result in effective communication about his treatment or care while being treated by Defendants.

**ANSWER:**

Defendants object to Interrogatory No. 10 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "effective" and "communication". Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition. Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.

Further answering, Defendants state that it has established the Policies, which set forth procedures for effective communication with persons who are hearing impaired.  The Policies are consistent with state and federal laws and regulations.  Defendants regularly provide training

to medical staff and to their employees on the Policies. In conjunction with the Policies, Defendants also provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, and further provide these individuals with equal opportunity to benefit from Defendants' services. Examples of auxiliary aids provided by Defendants are VRI equipment and live interpreters. Defendants effectively communicated with Plaintiff in a manner which was consisted with the Policies, and all applicable federal and state laws, and Plaintiff's medical records reflect that such communication was effective and that Plaintiff was provided with equal opportunity and meaningful access to Defendants' services.

**INTERROGATORY NO. 11:** Identify each UH employee that communicated or attempted to communicate with Plaintiff during each visit identified in Interrogatory No. 1.

**ANSWER:**

Defendants object to Interrogatory No. 11 on the grounds that it is overly broad and unduly burdensome. Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "UH employee", "communicated", "communicate", "visit", and "Interrogatory No. 1". Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition. Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory. Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit. Further answering, the medical records speak for themselves. A variety of medical professionals and visits are at issue in this lawsuit and information as to the specific details with respect to communication with Plaintiff is better requested through a deposition. Further answering, *see*

documents produced that detail Plaintiff's complaints and the individuals responsible for responding to the complaints.


**INTERROGATORY NO. 12:** For each person identified in response to Interrogatory No. 11, identify all methods of communication the individual used while interacting with Plaintiff. To the extent an individual communicated in more than one method, please identify each method and the date each method was used.

**ANSWER:**

Defendants object to Interrogatory No. 12 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "Interrogatory No. 11", "methods of communication", and "communicated".  Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition. Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.  Further answering, Defendants state that all medical personnel and employees followed the applicable policies with respect to the treatment and communication efforts provided to Plaintiff.  Further answering, the medical records speak for themselves.  A variety of medical professionals and visits are at issue in this lawsuit and information as to the specific details with respect to communication with Plaintiff is better requested through a deposition.  Further answering, *see* documents produced that detail Plaintiff's complaints and the individuals responsible for responding to the complaints.

**INTERROGATORY NO. 13:** For each visit identified in Interrogatory No. 1, identify each individual who was involved in any way in the determination of the auxiliary aids and/or services or reasonable accommodations for Plaintiff while at UH, including their roles in and their contribution to the determination.

**ANSWER:**

Defendants object to Interrogatory No. 13 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "roles", "determination", "auxiliary aids and/or services", and "reasonable accommodations".  Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition.  Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory. Defendant also objects to this Request on the grounds that it is duplicative.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit.  Further answering, the medical records speak for themselves.  A variety of medical professionals and visits are at issue in this lawsuit and information as to the specific details with respect to communication with Plaintiff is better requested through a deposition.

**INTERROGATORY NO. 14:** Provide a list of any grievances or complaints, verbal or written, you have received from September 7, 2013 to the present from deaf or hard of hearing patients concerning communication, including the nature of the grievance or complaint, date the grievance or complaint was made, and the steps taken in response to the grievance or complaint.

**ANSWER:**

Defendants object to Interrogatory No. 14 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "deaf", "hard of hearing", "patients", "communication", "grievance", and "complaint".  Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition.  Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory. Defendant also objects to this Request on the grounds that it seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing general and specific objections, Defendants state that there employees responsible for the Policies and the MARTI system have had few complaints from patients.  Plaintiff complained and those documents are produced herewith. Defendants are requesting information from the MARTI system vendor, documents produced herewith, to further confirm the lack of downtime for the system.  Defendants have checked their Midas system for each Plaintiff.  The Midas system reports incidents.  The only incidents regarding the Plaintiff's involve Plaintiff John Horan and those documents are produced herewith.  Finally, a snapshot of the use of the MARTI system is included.  The MARTI system has been effective and it is now utilized system wide.


**INTERROGATORY NO. 15**: For each affirmative defense set forth in the Defendants' Answer:

    1) state in detail all facts upon which the Defendants base such defense

    2) the name, home address, home telephone number, business address, and business telephone number of all witnesses to those facts, and

3) the identity of all documents supporting such facts.

**ANSWER:**

Defendants object to Interrogatory No. 15 on the grounds that it is overly broad and unduly burdensome.  Defendants further object to this Interrogatory on the grounds that it seeks a narrative response more appropriately suited for a deposition.  Defendants further object to this Interrogatory to the extent that Plaintiff is already in possession of the information responsive to this Interrogatory. Defendant also objects to this Request on the grounds that it is duplicative. Defendant further objects to this Interrogatory to the extent that it seeks information and documents protected by the attorney client privilege, work product doctrine, or any other privilege or immunity.  Defendant also objects to this Interrogatory to the extent that it seeks information or documents from one or more of the Defendants who were not involved.  Subject to and without waiving the foregoing general and specific objections, Defendants state *see* documents produced during this lawsuit, all pleadings filed in this Lawsuit, Defendants' Motion to dismiss and all motions and replies related thereto, and Defendants' Rule 26 Initial Disclosures.  Further answering, Defendants state that its policies and procedures with respect to the implementation of, and access to, auxiliary services is compliant with all state and federal laws and regulations.   All medical personnel and employees of Defendants followed the applicable policies with respect to the treatment and communication efforts provided to Plaintiff. Plaintiff's medical records reflect that all medical personal and employees of Defendants were able to communicate with Plaintiff during all times material to this lawsuit.

**INTERROGATORY NO. 16:** Identify the individual(s) who were responsible for creating, drafting, editing Defendant's policies for providing auxiliary aids and services, and reasonable accommodations as identified in Interrogatory No. 2.

**ANSWER:**

Defendants object to Interrogatory No. 16 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "responsible", "policies", "auxiliary aids and services", "reasonable accommodations", and "Interrogatory No. 2". Defendant further objects to this Interrogatory to the extent that it seeks information and documents protected by the attorney client privilege, work product doctrine, or any other privilege or immunity.  Defendant also objects to this Interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving the foregoing general and specific objections, Defendants state that the Chief Nursing officer was responsible for drafting the following policies: C P-2 Access to Interpretive Services (formerly CP-53 & 57); and CP-53 Hearing or Sensory-Impaired Persons; CP-57 – Foreign Language Translators.

**INTERROGATORY NO. 17:** Describe the corporate structure of UHHS, UHAMC, UHMG, UHCMC, UPCP, including their hierarchical employee structures, their relationship to each other.

**ANSWER:**

Defendants object to Interrogatory No. 17 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Interrogatory on the grounds that it is vague and ambiguous with respect to the terms "corporate structure", "hierarchal employee structures", and

"relationship". Defendant further objects to this Interrogatory to the extent that it seeks information and documents protected by the attorney client privilege, work product doctrine, or any other privilege or immunity.  Defendant also objects to this Interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing general and specific objections, Defendants state that UHHS, UHAMC, UHMG, and UHCMC are each individual corporations for non-profit, and that UPCP is a medical professional corporation.

**INTERROGATORY NO. 18:** Describe all education or training requirements for providing auxiliary aids and services, and reasonable accommodations pursuant to UH policy(s) as identified in Interrogatory No. 2.

**ANSWER:**

Defendants object to Interrogatory No. 18 on the grounds that it is overly broad and unduly burdensome.  Defendants also object to this Request on the grounds that it is vague and ambiguous with respect to the terms "education", "training requirements", "auxiliary aids and services", "reasonable accommodations", "UH policy(s)", and "Interrogatory No. 2". Defendants further object to this request to the extent that Plaintiff is already in possession of this information.  Subject to and without waiving the foregoing general and specific objections, Defendants state: *see* documents produced during this lawsuit.

As to objections,

Respectfully submitted,

*/s/ David A. Campbell*_____
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November 2019, the foregoing was filed through the Court's CM/ECF electronic filing system, which will provide service to Defendants' counsel of record.

<div style="margin-left:auto">

*/s/ David A. Campbell*
Donald G. Slezak (0092422)
David A. Campbell (0066494)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
Donald.slezak@lewisbrisbois.com

*One of the Attorneys for Defendants*

</div>

4846-8057-3354.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN HORAN, et al., | )  CASE NO. 1:18-CV-02054 |
| | ) |
| Plaintiffs, | )  JUDGE PAMELA A. BARKER |
| | ) |
| vs. | ) |
| | ) |
| UNIVERSITY HOSPITALS HEALTH | ) |
| SYSTEM, INC., et al., | ) |
| | ) |
| Defendants. | ) |

---

## VERIFICATION OF INTERROGATORY RESPONSES

---

I, Katherine Perry, being duly cautioned and sworn, hereby declare as follows:

1.      I am currently a the Senior Litigation Analyst for University Hospitals Health System.  I verify Defendants' Interrogatory Responses (the "Answers") and and am duly authorized to do so.

2.      The matters stated in the foregoing Answers are not all within my personal knowledge.  As to those facts of which I do not have personal knowledge, the facts stated in said Answers are based upon business and personal records which I have reviewed and/or have been assembled by my counsel and I am informed by said counsel that the facts stated in said Answers are true.

3.      I have conducted a good faith investigation into the Answers.  The investigation has included multiple employee interviews and other communications to gain information and verify the Answers.

I have read the foregoing declaration and I affirm under penalty of perjury under the laws of Ohio and the United States of America that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Printed Name: _Katherine Perry_

Sigature:_Katherine Perry_

Date:_November 8, 2019_

1